CANTOR et, Plaintiffs, v. CANTOR and CANTOR, Admrx. de bonis non of the Estate of Harvey Cantor, Deceased, Defendants.

Probate Court, Montgomery County.

No. 140090.   Decided May 18, 1959.

454

*Messrs. Froug & Froug,* for Kathryn Ray Fast.
*Messrs. Goodman & Goodman,* for Samuel Cantor.
*Messrs. Estabrook, Finn & McKee,* for Faye Cantor and Faye Cantor, Administratrix.

Love, J.   This cause is before the Court upon a petition for

declaratory judgment filed by Samuel Cantor and Kathryn Ray Fast, surviving brother and sister of Harvey Cantor, deceased.

The decedent died on January 15, 1957. On January 16, 1957, James C. Baggott was appointed administrator, and fifteen days later he resigned. On January 31, 1957, Defendant Faye Cantor was appointed administratrix de bonis non. Faye Cantor is also a defendant as surviving spouse of Harvey Cantor.

The petition alleges that on the 15th day of March, 1943, Faye Cantor and Harvey Cantor were married and that shortly before said marriage said parties entered into an antenuptial agreement, a copy of which is attached to said petition and made a part thereof. The petition alleges that it was agreed that Faye Cantor was to receive fifteen thousand dollars ($15,000.00) upon the death of Harvey Cantor and such property as was voluntarily transferred to her by Harvey Cantor during his lifetime and that the remainder of his property was to pass by the statutes of descent and distribution as if he were unmarried, and both parties released and relinquished all other rights and claims against each other's estates. It is further alleged that the contract was in full force and effect on the date of Harvey Cantor's death and that the administratrix was administering the estate as if she were his sole heir. The petition prays that the rights of the parties under said contract be declared and that the administratrix be enjoined from making any distribution and for such other and further relief either in law or in equity.

Defendant Faye Cantor filed a motion to make the petition definite and certain which was overruled. Defendant also filed a motion to strike the phrase that the contract was in full force and effect on the date of Harvey Cantor's death. This motion was sustained on the grounds that said phrase constituted a conclusion.

Faye Cantor then filed a demurrer to the petition which was overruled. Subsequently, defendant administratrix filed an answer requesting a declaration of rights under the contract so that she might proceed to administer the estate according to law. Defendant Faye Cantor, surviving spouse, filed an answer setting forth the following five defenses:

1. The antenuptial agreement was void for failure of

Harvey Cantor to disclose all pertinent facts in fraud of her rights.

2. The antenuptial agreement was unfair, unreasonable, inadequate, and disproportionate to the property of Harvey Cantor, the value and extent of his property at the time said agreement was executed being unknown to said defendant in fraud of her rights.

3. Harvey Cantor failed to perform his obligations under said antenuptial agreement by failing to make a will in defendant's favor, thereby breaching his covenant.

4. Harvey Cantor and Faye Cantor terminated, cancelled, and voided said antenuptial agreement and agreed to destroy their respective copies, and Defendant Faye Cantor destroyed her copy.

5. Harvey Cantor died intestate leaving Faye Cantor his sole heir under the statutes of descent and distribution of Ohio.

Plaintiffs' reply to Faye Cantor's answer contained a general denial and alleged that the defendant did not commence a proceeding to attack the validity of the contract within six months after her appointment as administratrix de bonis non and that Harvey Cantor's estate had sufficient property in stocks and bonds and other property to pay fifteen thousand dollars ($15,000.00) to Faye Cantor.

On the day of the trial the defendant was granted leave to file an amended answer wherein she added her sixth defense:

6. Plaintiffs failed to file their claims under said written antenuptial agreement within the time prescribed by Sections 2117.06 and 2117.07, Revised Code.

At the trial plaintiffs established that they are the only surviving brother and sister of Harvey Cantor, offered an original signed copy of the contract, and rested. Defendant then moved for a declaration that plaintiffs had shown no right in Harvey Cantor's estate. The Court took this motion under advisement.

Defendant then offered evidence in support of her first and second defenses. Upon objection by plaintiffs the Court excluded the evidence on the ground that the failure to bring an action to set aside the agreement or otherwise attack it within the time prescribed by Section 2131.03, Revised Code,

made such defenses unavailable to defendant and that the evidence, therefore, was inadmissible.

Defendant offered evidence to support her fourth defense, which consisted partially of testimony by defendant that she and the decedent had mutually rescinded the antenuptial agreement. Such evidence was excluded on the ground that Section 2317.03, Revised Code (dead man's statute), is applicable. In support of her fourth defense defendant also offered the testimony of Mr. Henry H. Hollencamp, Attorney at Law, that shortly before his death Harvey Cantor conferred with him concerning preparation of a will whereby Faye Cantor would receive income from a trust of Harvey Cantor's property and whereby Harvey Cantor's relatives would ultimately succeed to the property. Mr. Hollencamp further testified that there was no mention of the antenuptial agreement during his conferences with Harvey Cantor. Mr. James C. Baggott, Attorney at Law and the original administrator, testified that no will was found. His testimony was corroborated by Mrs. Violet Coning, inheritance tax deputy of the county auditor's office, who testified concerning the contents of decedent's safe deposit box.

It was then stipulated by the parties that plaintiffs filed no claim with either fiduciary within the time limit of Sections 2117.06 and 2117.07, Revised Code. The entire Harvey Cantor estate file was then admitted into evidence.

Upon the pleadings and the evidence it appears to the Court that the following questions must be determined in order to declare rights and legal relations as between the parties:

1. What is the status of all the parties to this action relative to the estate of Harvey Cantor?

2. Does Section 2131.03, Revised Code, absolve the beneficiaries under an antenuptial agreement from proving performance in order to assert any rights thereunder?

3. Have plaintiffs proved sufficient performance by Harvey Cantor, thereby entitling them to the benefits of the antenuptial agreement?

4. Is Harvey Cantor's failure to make a will such a breach or default as to permit Faye Cantor to rescind the antenuptial agreement?

5. Must the beneficiaries of an antenuptial agreement

present the claim to the executor or administrator of the decedent's estate pursuant to Sections 2117.06 and 2117.07, Revised Code of Ohio?

Before treating the above issues, it is necessary to dispose of two evidentiary questions which arose during the trial which were not briefed by counsel. Faye Cantor, by her answer and evidence proffered at the trial, claims that plaintiffs have no right under this antenuptial agreement because (1) it was void for failure of Harvey Cantor to disclose the full extent of his property holdings at the time said agreement was executed and (2) that the provision for her therein was unfair, unreasonable, inadequate, and disproportionate to the property of Harvey Cantor.

Section 2131.03, Revised Code, provides:

"Any antenuptial or separation agreement to which a decedent was a party is valid unless action to set it aside is begun within six months after the appointment of the executor or administrator of the estate of such decedent, or unless within such period the validity of such agreement is otherwise attacked."

In *Petrich* v. *Petrich*, 44 Ohio Opinions, 457 (1950), the Court of Appeals for Cuyahoga County held that this section does not apply to an antenuptial agreement which is *void*. The Court stated:

"The allegations in defendant's answer and cross petition, . . . appears to present an issue of the validity of the agreement on the ground of 'fraud in the factum,' which if established would render the antenuptial agreement void. . . .

"It follows that if the contract in the instant case were void, there would be no basis upon which the six months' statute of limitations could be applied in this action."

In *Juhasz* v. *Juhasz*, 134 Ohio St., 257, 12 Ohio Opinions, 57 (1938), it was held that an antenuptial agreement is not invalidated merely because the portion fixed for the prospective bride is disproportionate. The court stated that a full disclosure by the husband nullifies the claim that the portion is disproportionate and that such disclosure is an affirmative defense to be sustained by those claiming the agreement to be valid. After finding as a matter of law that the portion given

to the wife under that agreement was disproportionate and after further finding a full disclosure was not proved, the court held that the antenuptial agreement was valid because an attack had not been made within six months as required by Section 10512-3, General Code, now Section 2131.03, Revised Code. Obviously the effect of the Supreme Court's holding is that an inadequate provision coupled with the nondisclosure of property holdings by the husband is "fraud in the inducement" and merely renders the contract *voidable*. Also see *Burlovic* v. *Farmer*, 162 Ohio St., 46, 54 Ohio Opinions, 5, 9 (1954).

In *Page's Ohio General Code*, 1935 Supplement, Section 10512-3 (now Section 2131.03, Revised Code), is followed by the following committee comment:

"The Supreme court has decided that a wife may by antenuptial or separation agreement bar or relinquish her rights in her husband's estate, but other court decisions hold that there must be the utmost good faith in the making of such agreements. Where the husband has misrepresented the value of his estate, the wife might have the right to set the agreement aside after his death, when the fraud is discovered. The committee believes such agreement should be deemed valid unless action to set it aside is brought within the time fixed by this section."

The holding in the *Juhasz* v. *Juhasz case, supra*, is consistent with the intent of the legislature as expressed in the above committee comment. In view of the holding in the *Juhasz* v. *Juhasz case* and since in the case at bar no attack was made on the agreement within six months from the appointment of Harvey Cantor's administrator, this Court is of the opinion that no evidence supporting defendant's first and second defenses is admissible. Since defendant did not timely seek to avoid this antenuptial agreement, it must now be considered as valid.

The second evidentiary question relates to part of the evidence proffered in support of defendant's fourth defense, namely, the testimony of Faye Cantor, a party to this action. The Court ruled from the Bench that such testimony was inadmissible under Section 2317.03, Revised Code. See *Mosier* v. *Mosier*, 72 Ohio Law Abs., 268 (1954). But the defendant contends that Mr. Hollencamp's testimony also supports her fourth

defense. The effect of this testimony is to establish that Harvey Cantor contemplated making a will whereby Faye Cantor would receive substantially more than fifteen thousand dollars ($15,-000.00) and that during several conferences concerning this will, which was never drawn, Harvey Cantor never mentioned the antenuptial agreement. The Court is of the opinion that this evidence in no way supports defendant's fourth defense. The antenuptial agreement clearly states that nothing therein is to prevent Harvey Cantor from adding to the provisions made therein for Faye Cantor. The fact that Harvey Cantor was contemplating a provision for her substantially in excess of fifteen thousand dollars ($15,000.00), therefore, was not inconsistent with the terms of the contract and in no way indicates that Harvey Cantor considered this contract rescinded.

The status of the parties to this action must be resolved before a complete treatment of the issues is possible. Plaintiffs contend that they are heirs-at-law. Defendant contends, that she is the sole heir under the statutes of descent and distribution.

Ordinarily, upon the death of a person, his property passes by will or by the statutes of descent and distribution. Section 2131.03, Revised Code, and the case law prior thereto recognized the validity of antenuptial agreements in Ohio. In some cases antenuptial agreements anticipate the execution of a will, in which case property passes by the will. In some antenuptial contracts it is provided that property is to pass under the statutes of descent and distribution as if the parties were unmarried. The agreement at bar is a combination of both the above types.

Section 2131.03, Revised Code, does not permit the parties to an antenuptial contract to change the effect of the statutes of descent and distribution. Only the legislature can confer or take away heirship. See *Hudnall* v. *Ham*, 183 Ill., 486 (1899) at pages 498 and 499. There is not the slightest indication in the wording of Section 2131.03, Revised Code, that the legislature intended to give the parties to an antenuptial agreement the power to change the effect of the statutes of descent and distribution. By enacting said section the Ohio Legislature merely recognized a third manner in which persons may succeed to property, to-wit: by contract.

In *In re Haugh Estate*, 27 Ohio Opinions, 20 (1943), the Probate Court of Seneca County was confronted with a problem of determining Ohio inheritance tax in an antenuptial agreement case. The court found that the beneficiaries of an antenuptial agreement take under the contract and concluded that their succession was taxable as a gift to take effect in possession and enjoyment at death.

This Court is of the opinion that if the beneficiaries of an antenuptial agreement, such as the one at bar, have any right to succeed under the contract, they are donee beneficiaries of a third party beneficiary contract. This position has been sustained by other courts in this country. See 26 Am. Jur., Husband and Wife, Section 293, page 897. Thus, defendant is correct in her contention that she is the sole heir under the statutes of descent and distribution of Ohio. The antenuptial agreement in the case at bar, if enforceable by plaintiffs, merely incorporates the statutes of descent and distribution by reference after eliminating the surviving spouse. Any succession thereunder by the plaintiffs is by contract, not by the statutes of descent and distribution.

Since plaintiffs are donee beneficiaries, it is fundamental that they have no rights under the contract unless it has been performed by Harvey Cantor, their donor. Plaintiffs contend that Section 2131.03, Revised Code, precludes defendant's third defense, i. e., that Harvey Cantor has not performed the contract. Said statute refers only to the validity of antenuptial agreements. As heretofore established, the legislature intended this section to limit the time in which questions of validity arising out of the right of the surviving spouse to avoid an antenuptial agreement may be litigated. There is no indication in the wording of the statute that the legislature intended to change the law of contracts by making enforceable an antenuptial agreement which has not been performed by the parties thereto. Here the legislature used the word "valid" to mean legally sufficient, i. e., capable of being enforced.

The antenuptial agreement at bar was an executory, bilateral contract at the time it was signed by the parties. Any contract must be valid before it can be enforced; but, since this agreement was not attacked within six months from the ad-

ministratrix's appointment, it must be deemed valid or capable of being enforced. It is elementary, however, that an executory contract must also have been performed before any enforceable rights arise therefrom.

The third issue is raised by defendant's motion at the end of plaintiff's case. Did plaintiffs prove that Harvey Cantor sufficiently performed the contract at bar in order to entitle them to any rights under the contract? Before treating this issue, it is necessary to examine the covenants of the contract.

Harvey Cantor agreed (1) to devise or bequeath by last will and testament fifteen thousand dollars ($15,000.00) in money, securities, or other property having such value at the time of his death; (2) to release all rights to the separate property of his prospective wife then owned or after acquired; (3) to refrain from interfering with the distribution of such separate property, whether during her lifetime or at her death, at which time such property undisposed of by will was to pass to her heirs as if she were unmarried; and (4) upon defendant's request, to execute all instruments of release or conveyance to give effect to the foregoing covenants.

Faye Cantor's covenants are substantially the same, except by her first covenant she agrees to accept the fifteen thousand dollar ($15,000.00) bequest in Harvey Cantor's will in lieu of all rights and claims she might have in his estate by virtue of their marriage.

Each party recites that nothing in the agreement shall prevent them from adding to the provisions by gift. All of the above covenants are conditioned upon the marriage of the parties. The marriage, then, is a condition precedent to the obligations under the covenants and the performance of this condition constitutes a substantial consideration for the contract.

After offering an original signed copy of the contract in evidence and testimony that established the plaintiffs as the only surviving brother and sister of Harvey Cantor, plaintiffs rested. By defendant's motion at this point in the trial, she contended that the plaintiffs had failed to show that Harvey Cantor had performed his first covenant under the contract. The plaintiffs contended that they had proved a substantial

performance of the contract and as beneficiaries thereunder were entitled to a declaration of their right to recover.

At this point the Harvey Cantor estate file had not yet been introduced into evidence, but the Court takes judicial notice of its own records so that omission is of little consequence. The inventory and appraisement and the schedule of debts in his estate clearly show that the net estate will approximate three hundred fifty thousand dollars ($350,000.00).

The defendant had admitted in her answer that she and Harvey Cantor signed the agreement and that they were married. The Court is of the opinion that the defendant's motion should be overruled and that plaintiffs have proved performance of the first covenant.

Harvey Cantor, not having survived Faye Cantor, could not complete his second covenant. His third covenant was a negative one in effect and, if he failed to perform it, it must be proved by the defendant. His fourth covenant was to be performed upon defendant's request. Plaintiffs, therefore, are not charged with proving it was performed until defendant has proved that she had requested performance.

It must be conceded that Harvey Cantor did not perform his first covenant to the letter since there is no probative evidence that he died with a will. This Court was unable to find any reported Ohio cases having facts similar to those at bar. *Wellington* v. *Rugg*, 136 N. E., 831, 243 Mass., 30 (1922), involved an antenuptial agreement very similar to the case at bar. Oddly enough, that case was cited by the defendant in support of her contention that this antenuptial agreement should be set aside.

In *Wellington* v. *Rugg* the wife agreed to waive all her rights to succeed to her prospective husband's property as consideration for a promise by the husband to bequeath five thousand dollars ($5,000.00) to her in his last will and testament. The husband died without a will, and the wife brought an action to set aside the agreement on two grounds: (1) that his failure to make a will constituted such non-performance as to entitle her to rescind and (2) that the agreement was induced by fraud. Upon demurrer the court held that the action could proceed on the second ground but that the first ground could not be sustained. The theory of the Massachusetts Supreme Court was that the covenants were independent and that

the wife was entitled to damages since the husband's failure to leave a will only goes to part of the consideration. Also see *In re Ward's Estate*, 285 P. 2d, 1081 (1955).

Most of the cases cited by defendant are authority for a holding that ordinarily the covenants of an antenuptial agreement are mutual and dependent but, as pointed out later in this opinion, those cases are distinguishable on their facts. Of all the cases cited by both counsel, *Wellington* v. *Rugg, supra,* is the only one that has substantially similar facts. There is great merit in the holding of the *Rugg case* that covenants such as those in that agreement and those in the agreement at bar are independent and a breach of the covenant to devise or bequeath by will does not warrant rescission of the entire antenuptial contract. But it is not necessary to establish these covenants as independent in order for the plaintiffs to be entitled to a declaration of recovery under the contract at bar.

In 12 Am. Jur., Contracts, Section 343, page 900, it is stated:

". . . there is considerable authority in support of the rule that a party must fully perform the stipulations on his part before the other party is obligated to perform unless the promises are independent. A more liberal rule is, however, supported by much authority and the trend is toward this latter rule. Thus it is said that the law looks to the spirit of a contract and not the letter of it, and that *the question therefore is not whether a party has literally complied with it, but whether he has substantially done so.*" (Emphasis supplied.)

Many cases are cited by the author to manifest that this is a definite trend in the law of contracts.

In *The Ohio Farmer's Insurance Co.* v. *Cochran*, 104 Ohio St., 427 (1922), the Supreme Court of Ohio has applied the doctrine of substantial performance; the second syllabus states:

"The long and uniformly settled rule as to contracts requires only a substantial performance in order to recover upon such contract. Merely nominal, trifling, or technical departures are not sufficient to breach the contract."

Also see *Kane* v. *Stone Co.*, 39 Ohio St., 1 (1883).

It is well established that the third party beneficiaries of a contract stand in the same position as their donor and that,

if he has performed, they are entitled to recover under the contract.

In 11 Ohio Jurisprudence 2d, Contracts, Section 230, page 489, it is stated:

"While in the early law full and strict compliance with the terms of a contract was necessary, it is now well settled that substantial performance of the promise made by one party is sufficient to warrant recovery by him of damages for the breach of the promise made by the other party."

Thus, if Harvey Cantor has substantially performed the contract, plaintiffs would be entitled to recover damages from Faye Cantor if she refuses to release her marital rights in his estate.

When the entire contract at bar is examined, there is no doubt as to the spirit or the object of the covenants. Both parties having estates of their own did not wish their marriage to alter their right to dispose of their separate property in any manner they saw fit. While literally Harvey Cantor promised to will fifteen thousand dollars ($15,000.00) to Faye Cantor, the object of the contract was that she was to receive fifteen thousand dollars ($15,000.00) at his death. Harvey Cantor did not covenant to will any specific property to Faye Cantor. Harvey Cantor's property in excess of fifteen thousand dollars ($15,000.00) and undisposed of by will was to pass under the statutes of descent and distribution as if he had left no widow.

It is the opinion of this Court that the parties to this contract did not intend a literal compliance with Harvey Cantor's first covenant. Said covenant literally requires the bequest or devise to have the value of fifteen thousand dollars ($15,000.00) on the date of Harvey Cantor's death. It is common knowledge that property, except money and some securities, changes in value from time to time. If Harvey Cantor would have willed certain property which depreciated in value before his death, he would not have literally complied with his covenant. In other words, when the whole contract is considered, the parties did not attach as much significance to the execution of a will as defendant would lead the Court to believe.

This Court is of the opinion that by the first covenant of Harvey Cantor the parties intended that his estate was to pay and that Faye Cantor was to receive fifteen thousand

dollars ($15,000.00) upon his death. Harvey Cantor left a net estate far in excess of the fifteen thousand dollars ($15,000.00) he promised to will to Faye Cantor. There was no evidence that Harvey Cantor failed to perform any of his other three covenants.

In view of the foregoing, Harvey Cantor has substantially performed the contract and his failure to literally comply with the mode of payment, i. e., by last will and testament, may be disregarded. The motion of defendant at the end of plaintiffs' case must therefore be overruled and defendant's third defense based on non-performance must fail.

But defendant contends by her third defense that she has the right to treat the contract as rescinded. She contends that, when a contract is breached, the innocent party may elect the remedy. No cases are cited by defendant in support of this contention and this Court is of the opinion that defendant is only partially correct. Her right to elect rescission is qualified by the necessary existence of a substantial breach. The theory on which courts permit rescission for non-performance is based upon an implied consent to rescind. If the breach goes to the root of the contract, the law will imply that the defaulting party intended to treat the contract as rescinded. Then and only then may the other party also treat the contract as rescinded. While it is well established that such party need not obtain a court decree entitling him to treat the contract as rescinded, the party who has breached the contract may repudiate such election by requiring the innocent party to prove his right to elect rescission. The plaintiffs in the case at bar have chosen to do this by seeking a declaratory judgment.

In *Buschmeyer* v. *The Advance Machinery Co.*, 7 Ohio App., 202 (1916), motion to certify overruled, 14 O. L. R., 488 (1916), the Court of Appeals of Lucas County stated on page 210:

"We think that where there is such a breach of a material and vital condition of a contract the other party thereto may either treat the contract as terminated and rescind it and pursue a remedy that such rescission entitles him to, or he may sue for damages for a breach of the contract."

The Court of Appeals for the Second District in *Fireproof Construction, Inc.* v. *Branner-Bell, Inc.*, 54 Ohio Law Abs., 149

(1949), at pages 151 and 152 followed the above rule stated in the *Buschmeyer case.*

In *Dickson* v. *Wolin,* 18 Ohio Law Abs., 107 (1934), the Court of Appeals of Summit County states on page 108:

"It is an elementary rule of contracts that, upon a material breach of a contract by one party thereto, the other contracting party may, at his option, elect to rescind the contract, or continue it in force and sue for damages for the breach."

The court further states on pages 108 and 109:

"In other words, the conduct of the parties, as shown by the evidence, was such that, in our opinion, a mutual abandonment of the contract may be properly implied.

"The general rule is that, in the absence of fraud or mistake, one of the parties to a contract cannot rescind or withdraw from its performance without the consent of the other party; but where one party's failure to perform is of such a nature as to clearly indicate an intention not to further be bound by the contract and to justify the inference that he repudiates or abandons it, such defaulter is presumed to consent to the termination of the contract if the other party so elects, and in that event such other party may maintain an action in equity to rescind the contract."

In other words, not every breach of a contract warrants rescission and such is the rule in this country.

In 12 American Jurisprudence, Contracts, Section 440, page 1020, it is stated:

"It is not every breach of a contract or failure exactly to perform—certainly not every partial failure to perform—that entitles the other party to rescind. A breach which goes to only a part of the consideration, is incidental and subordinate to the main purpose of the contract, and may be compensated in damages does not warrant a rescission of the contract; the injured party is still bound to perform his part of the agreement, and his only remedy for the breach consists of the damages he has suffered therefrom."

In 12 Am. Jur., Contracts, Section 343, page 901, it is stated:

"Ordinarily, however, not every breach of a contract will authorize the other party to abandon the contract and to refuse further performance. Ordinarily, the right to claim a dis-

charge of the whole contract depends, not on whether the act constituting the breach was inconsistent with the terms of the contract, but upon whether it was inconsistent with an intention to be further bound by its terms or upon whether the breach was such as to defeat the purpose of the contract. The circumstances attending a breach of contract, the intention with which it was committed, and its effect upon the other party and upon the general object sought to be accomplished by the contract must be considered in determining whether or not the breach will operate as a discharge.''

Applying the foregoing law, the question now under consideration becomes an issue of fact. On the basis of the record, do Harvey Cantor's actions in relation to the contract imply that he intended to treat the contract as rescinded? This Court is of the opinion that the evidence does not show that Harvey Cantor intended to rescind the contract nor is the breach substantial enough for Faye Cantor to do so.

Defendant's counsel argues that under the provisions of this contract Harvey Cantor might have left more than fifteen thousand dollars ($15,000.00) to Faye Cantor if he had executed a will. Counsel cites Mr. Hollencamp's testimony that Harvey Cantor was considering a will with a more substantial provision for her. Defendant further contends that this Court cannot enforce this contract because it would be, in effect, making a minimal will for Harvey Cantor.

This Court cannot agree with such contentions. Harvey Cantor was obligated to leave fifteen thousand dollars ($15,000) to Faye Cantor in money, securities, or other property having such value at the time of his death. By recitation in the contract he was permitted to leave more if he so wished. Granted, shortly before his death Harvey Cantor was considering a provision for Faye Cantor in excess of fifteen thousand dollars ($15,000.00). But, as heretofore established, such was not inconsistent with the terms of the contract. The issue of fact now being resolved is whether his failure to leave a will manifests bad faith or was such a default as to imply an intent to rescind the contract. With only Mr. Hollencamp's testimony before the Court, this Court cannot imply such intent from Harvey Cantor's actions. Thus, the Court must rely upon the

contract to determine the significance of Harvey Cantor's failure to make a will.

The contract clearly shows that both parties intended that their heirs as measured by the statutes of descent and distribution, with each surviving spouse removed, were to succeed to their separate estates if the party dying first did not otherwise dispose of his property by will. Harvey Cantor's estate in excess of fifteen thousand dollars ($15,000.00), which was to be given to Faye Cantor by will, was to pass to his heirs exclusive of Faye Cantor in the event he died intestate. His failure to leave a will does not reflect bad faith or an intent to abandon the contract and becomes insignificant in light of the fact that his net estate is valued far in excess of fifteen thousand dollars ($15,000.00).

Such failure leads this Court to the conclusion that, although Harvey Cantor was considering an additional provision for Faye Cantor, he did not legally accomplish his latest wish. This Court cannot conclude that such failure, coupled with a manifestation of intent to provide more, implies that he intended the contract to be rescinded. The fact that Faye Cantor is discontented because Harvey Cantor did not do what he was permitted to under the contract is not grounds for her to treat the contract as rescinded. The marriage has been fully performed by both parties and to permit Faye Cantor to overthrow the entire contract would work a fraud upon the marriage. See *Ross* v. *Ross*, 2 O. Dec. Reprints, 181 (1859). Since he has failed to will fifteen thousand dollars ($15,000.00) to Faye Cantor and since such failure does not defeat the purpose of the contract, she is entitled to recover fifteen thousand dollars ($15,000.00) from his estate.

Defendant has cited *Phillips' Ex'rs* v. *Phillips*, 14 Ohio St., 308 (1863); *Whistler* v. *Allward*, 57 Ohio App., 147, 10 Ohio Opinions, 197 (1936), and *Stotler* v. *Stotler*, 19 O. N. P. (N. S.), 369 (1916), in support of her contention that an antenuptial agreement must be "fairly performed" by the husband before it is enforceable against the wife. The *Phillips case* was decided on demurrer and there is nothing to indicate the degree of the husband's breach. On pages 314 and 315 the court states:

"We are all of opinion, however, that the antenuptial con-

tract can not operate to bar either dower, a distributive share of the estate, or a claim for the allowance of a year's support, unless it appear that the provisions of the contract in favor of the widow have been fairly performed: . . .''

This Court is of the opinion that Harvey Cantor did ''fairly perform'' his contract in the case at bar.

The *Whistler case* is clearly distinguishable on its facts, and the facts of the *Stotler case* showed that the husband refused to comply with substantial contract provisions during his lifetime. From this refusal the court correctly implied an intent to rescind.

The defendant has cited *Southern Ohio Savings Bank & Trust Co.* v. *Burkhart,* 148 Ohio St., 149, 35 Ohio Opinions, 166 (1947), and three Iowa cases, to-wit: *York* v. *Ferner,* 59 Iowa, 487 (1882); *Jacobs* v. *Jacobs,* 42 Iowa, 600 (1876); and *Veeder* v. *Veeder,* 195 Iowa, 587 (1923), all of which cases involved a spouse who had not performed his part in the marriage relation. These cases emphasize the substantial character of the marriage as consideration in antenuptial agreements, but in the case at bar the evidence does not show that Harvey Cantor has been guilty of such default.

*Becker* v. *Becker,* 241 Ill., 423 (1909), is not applicable in the case at bar because there the husband promised to maintain insurance on his life in return for the promise that he would receive his wife's entire estate. He completely failed to perform this covenant during his lifetime and the court held that he could not, therefore, seek performance by his wife's estate.

In both *Hastings* v. *Dickinson,* 7 Mass., 153 (1810) and *Eaton* v. *Eaton,* 233 Mass., 351 (1919), the husband's estate was insolvent. In the latter case the husband deliberately depleted his estate by inter vivos gifts to his sons before his death. The facts of these cases are clearly distinguishable from the facts of the case at bar.

In *Pierce* v. *Pierce,* 71 N. Y., 154 (1876), the husband misrepresented the provisions made for his wife in the agreement. This case is distinguishable because the antenuptial agreement was set aside on the grounds that the husband had fraudulently induced the signing of the agreement, which defense this Court has hereinbefore precluded because of Section 2131.03, Revised Code.

*Sheldon* v. *Bliss*, 8 N. Y., 31 (1853), and *Woodward* v. *Woodward*, 37 Tenn., 49 (1857), are cases which, although decided on facts different from those in the case at bar, tend to support defendant's contention. But this Court is of the opinion that *Wellington* v. *Rugg, supra*, and the opinion of this Court herein establish the better rule.

Defendant contends by her sixth defense that Sections 2117.06 and 2117.07, Revised Code, require the beneficiaries of an antenuptial agreement to present their claims to the executor or administrator. With this contention this Court cannot agree. Section 2117.06, Revised Code, provides in part as follows:

"All *creditors* having claims *against* an estate shall present their claims to the executor or administrator in writing, including claims arising out of contract, out of tort, on cognovit notes, or on judgments, whether due or not due, secured or unsecured, liquidated or unliquidated." (Emphasis supplied.)

The cases cited by plaintiffs holding that Section 2117.06, Revised Code, does not apply to persons claiming title to property in the estate are not applicable because in all of those cases the persons claimed title against the decedent, not through him as in the case at bar. Defendant cites no cases in support of her contention.

While the plaintiffs claim under a contract, they are not creditors within the meaning of this section and do not have claims against the estate. They are donee beneficiaries of the contract and claim as distributees, i. e., through the decedent, not against him. The plaintiffs do not claim to be on the same footing as creditors. Creditors have the right to be paid before any distribution of the estate, and the purpose of the statutes requiring claims against an estate to be presented and suits thereon to be brought within a given time is to render the estate ready for distribution within a reasonable time. In *Favorite* v. *Booher's Adm'r.*, 17 Ohio St., 548 (1867), the Supreme Court defined the term "creditor" as used in a section of the Code then requiring suits by creditors to be brought within four years from appointment of an executor of administrator. The court states on page 553:

"In this section the term creditor is used in a generic sense, and includes all persons having rights in action against the decedent. The section is founded on reasons of public policy;

and its object is to promote the early and final settlement of estates, and to enable distribution to be made of the residuum among those entitled, freed from charges and incumbrances.''

Sections 2117.06 and 2117.07, Revised Code, have the same purpose and the term ''creditor'' as used therein has the same meaning as announced by the Supreme Court in the *Booher case, supra.* In *Pierce* v. *Johnson,* 136 Ohio St., 95, 16 Ohio Opinions, 34 (1939), after quoting the above portion of the *Booher case, supra,* the Supreme Court states on page 99:

''This definition has not been changed by the statutes under consideration in the case at bar. The term 'creditor,' as used in Section 10509-112, General Code [now Section 2117.06, Revised Code], must, therefore, be construed to mean 'all persons having rights in action against the decedent' . . .''

From the foregoing it is clear that these statutes have been enacted to benefit the distributees of an estate. It would be anomalous to require those persons claiming to be distributees to present their claims. Plaintiffs, therefore, were not required to present claims to the administratrix in the case at bar.

To summarize, no action was commenced to set aside the antenuptial agreement or attack made thereon as required by Section 2131.03, Revised Code. Such failure precludes defendant's defenses that the antenuptial agreement at bar is invalid for want of a full disclosure by Harvey Cantor of his property and by reason of any disproportionate provision for Faye Cantor. Evidence proffered in support of these defenses is, therefore, inadmissible.

The testimony of Faye Cantor that she and Harvey Cantor mutually agreed to rescind this contract is inadmissible because of Section 2317.03, Revised Code. Mr. Hollencamp's testimony does not support defendant's contention that the parties mutually agreed to rescind this contract and defendant's fourth defense, therefore, fails.

Faye Cantor is Harvey Cantor's sole heir under the statutes of descent and distribution of Ohio. Plaintiffs are donee beneficiaries of the contract at bar, and Section 2131.03, Revised Code, does not absolve plaintiffs from proving performance of the contract by Harvey Cantor to entitle them to any right thereunder.

474

Plaintiffs have proved that Harvey Cantor substantially performed the contract, and defendant's motion at the end of plaintiffs' case should be overruled. Defendant has failed to prove that she is entitled to rescind the contract, but she has the right to receive fifteen thousand dollars ($15,000.00) from the estate of Harvey Cantor according to the object and purpose of the contract. Plaintiffs are entitled to the balance of Harvey Cantor's estate after all debts and costs of administration have been paid.

Plaintiffs claim as distributees, not as creditors, and are not required to present such claims pursuant to Sections 2117.06 and 2117.07, Revised Code.

A decree may be submitted in accordance with this opinion. Costs to the estate.