CANTOR ET AL., ADMRS., APPELLANTS, *v.* DEPARTMENT OF TAXATION, APPELLEE.

[Cite as Cantor v. Dept. of Taxation, 3 Ohio App. 2d 285.]

(No. 2817—Decided March 28, 1964.)

*Messrs. Estabrook, Finn & McKee, Mr. Peter J. Donahue, Messrs. Froug & Froug* and *Messrs. Goodman & Goodman,* for appellants.

*Mr. William B. Saxbe,* attorney general, and *Mr. Daronne R. Tate,* for appellee.

CRAWFORD, J. This case is presented upon a narrative bill of exceptions, consisting of an agreed statement of facts with an attached exhibit. Omitting the formal framework and the text of the exhibit, the bill of exceptions reads as follows:

"The following agreed facts together with the transcript of journal and docket entries and supporting original papers certified and filed in the Court of Appeals constitute the appellants' bill of exceptions.

"Harvey Cantor, a resident of Montgomery County, Ohio, died on January 15, 1957, and his estate was admitted to probate in such county. A declaratory judgment action was filed in the Probate Court by the brother and sister of the decedent, Samuel Cantor and Kathryn Ray Fast, to determine the succession of the property in the estate and to determine the effect of an ante-nuptial agreement entered into between the decedent and his wife, Faye Cantor attached and marked exhibit 'A.' Probate Court ruled on May 18, 1959, that Faye Cantor, the decedent's wife, was to receive fifteen thousand dollars ($15,000) pursuant to the ante-nuptial agreement and that the balance of the estate was to be distributed in equal shares to Samuel Canton and Kathryn Ray Fast, the decedent's brother and sister, as legatees. *Cantor et al.* v. *Cantor and Cantor,* 86 Ohio Law Abstract 452.

"The decedent's widow, Faye Cantor, appealed this decision of the Probate Court to the Montgomery County Court of Appeals (case No. 2553). However, a settlement agreement was entered into by the parties and the appeal was dismissed with the consent of all parties, the Court of Appeals noting that

the dismissal was caused by a compromise and settlement agreement among the parties.

"Under the terms of the settlement agreement the claimants to the property in the estate of Harvey Cantor, namely Faye Cantor, Samuel Cantor and Kathryn Ray Fast, each of whom was represented by counsel, agreed that the net estate of Harvey Cantor, would be distributed as follows: Faye Cantor 50%, Samuel Cantor 25%, and Kathryn Ray Fast 25%; partial distributions under the administration of the estate have been based on this agreement.

"The preliminary determination of inheritance tax journalized under date of March 16, 1962, imposed inheritance tax on the successions to Faye Cantor, Samuel Cantor and Kathryn Ray Fast, in accordance with the provisions of the settlement agreement. The Tax Commissioner duly filed exceptions to this preliminary determination, on the ground that the court should have assessed the inheritance tax in accordance with the declaratory judgment decision of the Probate Court of Montgomery County on May 18, 1959. The commissioner contended that the tax should be based on a succession to Faye Cantor of $15,000 with the remainder of the property to be divided equally between the brother and sister, Samuel Cantor and Kathryn Ray Fast.

"In a decision, dated April 25, 1963, the Probate Court of Montgomery County, Ohio, agreed with the Tax Commissioner. The journal entry of this decision was entered on September 13, 1963, and it is from this entry the administrators of the estate of Harvey Cantor take exceptions and on which they base their appeal to this court."

The Ohio inheritance tax is imposed upon the right to receive or to succeed to estates. Section 7, Article XII, Constitution of Ohio; *In re Estate of Chadwick,* 167 Ohio St. 373. The right arises upon the death. See *In re Estate of McGreevey* (1934), 32 N. P. (N. S.) 212; *In re Estate of Williams* (1956), 73 Ohio Law Abs. 441.

Power is reposed in the Legislature to enact such a tax and to define that which is to be considered a succession. *In re Estate of Evans,* 173 Ohio St. 137, 139. The Legislature has provided the following definition: " 'Succession' means the passing of property in possession or enjoyment, present or fu-

ture." Section 5731.01 (B), Revised Code. The Legislature, in Section 5731.02, Revised Code, has further provided that:

"A tax is hereby levied upon the succession to any property passing, in trust or otherwise, for the use of a person, institution, or corporation, in the following cases:

"(A) When the succession is by will or by the intestate laws of this state from a person who was a resident of this state at the time of his death;
" * * *

"(C) When the succession is to property from a resident, or to property within this state from a nonresident, by deed, grant, sale, assignment, or gift, made without a valuable consideration substantially equivalent in money or money's worth to the full value of such property:
" * * *

"(2) Intended to take effect in possession or enjoyment at or after such death * * *."

Appellees challenge the capacity of the co-administrators to pursue this appeal, because they were not parties to the settlement agreement, and because the estate is not adversely affected. They cite 2 Ohio Jurisprudence 2d 771, Appellate Review, Section 165. That text indicates that a fiduciary might appeal in a personal capacity if he is personally affected.

Appellants respond that they are personally affected because they say the estate has been distributed on the basis of the settlement agreement, and they have retained only sufficient funds to pay the tax upon that basis and no longer have in their hands the additional sum necessary to pay the higher tax imposed by the order of the Probate Court now appealed from, and that they are personally liable for this difference. Section 5731.17, Revised Code; 29 Ohio Jurisprudence 2d 71, Inheritance and Estate Taxes, Section 74.

They also cite 2 Ohio Jurisprudence 2d 777, Appellate Review, Section 169, to the effect that the failure to raise objections to defect of parties will be deemed to have been waived.

The transcript and docket and journal entries and original papers reveal an order of distribution in accordance with the terms of the settlement agreement. The bill of exceptions indicates that partial distribution has been made. Otherwise, our

examination of the record fails to disclose the extent of distribution already made.

Assuming without deciding at this point that the administrators have a right to be here, we proceed to examine the merits of the appeal.

Appellants contend: that the succession was to the respective shares provided in the settlement agreement; and that this court so decided and adjudged when we approved the entry dismissing the appeal from the declaratory judgment.

With respect to the first proposition, in the absence of a direct precedent in the Supreme Court, we have carefully examined the opinions of other courts which bear more directly upon the subject. Their trend is clear and their logic sound.

From the Constitution, statutes and decisions above referred to, it is clear that the thing taxed is the *right* to receive or to succeed to the estate upon death, and that the right arises at the time of death.

According to the declaratory judgment entered earlier by the Probate Court, in the light of the antenuptial agreement which was declared valid and its effect unimpaired by decedent's failure to make a will, the widow, Faye Cantor, had a right to receive or succeed to $15,000, and the brother and sister, Samuel Cantor and Kathryn Ray Fast, had a right to receive or succeed to the balance in equal portions. *Cantor* v. *Cantor* (1959), 86 Ohio Law Abs. 452. These are the rights which are taxable. What the beneficiaries may do subsequently in dealing with their rights does not affect the taxability of their original rights to receive and succeed to the estate, which came into existence at the time of death.

The nature and extent of these respective rights have been determined upon the basis of the validity of the antenuptial agreement. There is no requirement that the right, in order to be taxable, must arise either purely by will or by the law of descent and distribution. There is no such limitation in the Constitution or in the legislation imposing the tax. In fact, the latter expressly covers various situations and acts which, along with either a will or intestacy, enter into the creation or determination of the right that is taxable. Sections 5731.01 and 5731.02, Revised Code.

We approve the reasoning of the Probate Court in the declaratory judgment action, when it said:

"* * * Section 2131.03, Revised Code, and the case law prior thereto recognized the validity of antenuptial agreements in Ohio. In some cases antenuptial agreements anticipate the execution of a will, in which case property passes by the will. In some antenuptial contracts it is provided that property is to pass under the statutes of descent and distribution as if the parties were unmarried. The agreement at bar is a combination of both the above types.

"Section 2131.03, Revised Code, does not permit the parties to an antenuptial contract to change the effect of the statutes of descent and distribution. Only the Legislature can confer or take away heirship. See *Hudnall* v. *Ham,* 183 Ill. 486, at pages 498 and 499. There is not the slightest indication in the wording of Section 2131.03, Revised Code, that the Legislature intended to give the parties to an antenuptial agreement the power to change the effect of the statutes of descent and distribution. By enacting said section the Ohio Legislature merely recognized a third manner in which persons may succeed to property, to-wit: by contract." *Cantor* v. *Cantor,* 86 Ohio Law Abs. 452, at 461.

In harmony with this statement are the second and third headnotes of *In re Haugh Estate,* 27 Ohio Opinions 20, which read:

"2. The word 'otherwise' means in a different manner, or in other ways.

"3. The all inclusive term of 'otherwise' as used in the phrase 'any property passing in trust or otherwise' in Section 5332, General Code [Section 5731.02, Revised Code], could include an ante-nuptial contract."

The fact that the Probate Court was required to pass upon the validity of the agreement does not change the situation. The determination when made simply declared what rights the parties had at the time of death.

When that judgment reached this court on appeal, it remained in existence, although not executed. It was not reversed. We did not inquire into its correctness, because instead the parties made a new contract for themselves and requested dismissal of the appeal. The ensuing entry in this court

merely noted the existence of such settlement agreement and dismissed the appeal. The declaratory judgment thereupon became the final judicial determination of the rights of the parties prior to the agreement.

It has been consistently held that the rights to receive or to succeed to the estate having arisen and the tax having attached thereto at the time of the death of the decedent, no waiver, change of title, transfer, or agreement made or entered into thereafter, can affect the tax. See *In re Estate of Mc-Greevey, supra,*; and *In re Estate of Williams, supra,* both cited above.

Upon the filing of the entry in this court noting the settlement agreement and dismissing the appeal, new rights were fixed by the contract among the beneficiaries and were substituted for their original rights to receive and succeed to the estate; but those original rights, having come into existence and the tax having attached to them at death, were still taxable. The new rights which the beneficiaries derived from their own contract among themselves were contractual rights, not taxable rights to an agreed distribution of the estate.

The judgment will be affirmed.

*Judgment affirmed.*

KERNS, P. J., and SHERER, J., concur.