OPINION
{¶ 1} Plaintiff-appellant, Jim Ballinger, acting pro se, appeals from the Warren County Common Pleas Court's decision awarding defendant-appellee, James K. Luers, $2,260 for breach of contract, and $700 for slander of title.
 {¶ 2} Ballinger is a Consulting Engineer and Surveyor. At the time of this dispute, Luers was the owner of a 13.896-acre tract of land situated in Franklin Township, in Warren County, Ohio. In February 2001, Luers decided to subdivide this property for a project known as "Timberwind Subdivision." In furtherance of the project, Luers' son, Tim, acting on Luers' behalf, orally contracted with Ballinger to have him provide engineering and surveying services for the project, for $1,800. Luers and Ballinger subsequently modified the contract price by increasing it to $2,000.
 {¶ 3} Luers' objective in contracting for Ballinger's services was to obtain a final plat for the property, approved for recordation by the Warren County Regional Planning Commission ("WCRPC") and other governmental authorities. While the parties never set a specific date by which the engineering and surveying services had to be completed, both parties contemplated that a preliminary plat would be approved at the WCRPC's March 2001 meeting.
 {¶ 4} In March 2001, Ballinger billed Luers for $800, for locating the property's boundaries. Luers paid this amount. Because certain problems arose regarding the plat's layout, the preliminary plat was not tentatively approved until June 28, 2001. On July 27, 2001, Luers, having become increasingly dissatisfied with Ballinger's work, sent him a letter demanding that Ballinger produce a final plat, suitable for recordation, by August 3, 2001, at which time he would be paid the remaining $1,200 balance of his fee. In the letter, Luers accused Ballinger of bad faith and incompetence, and threatened to complain to "the appropriate State Registering Agency, County Offices, and Better Business Bureau and pursue recuperation (sic) of expenses."
 {¶ 5} In September 2001, Ballinger completed a final plat, lacking only his signature and seal. On September 24, 2001, Luers went to Ballinger's office, prepared to pay him the remaining $1,200 balance due on their contract in exchange for the signed and sealed final plat. However, Ballinger refused to turn over the plat to Luers unless he signed a document that Ballinger had drafted, entitled "Release and Termination of Services." Ballinger's release included provisions stating he was "sorry he got involved with amateurs and neophytes who refuse to take his advice and counsel and then blame him for events that work out as he had warned they would[;]" that he "no longer wishes to be `the engineer of distressed properties[;]'" and that "[s]ince [Luers] has no faith in his engineer, and since [he] has no intention of working for a client who has no money[,] * * * [t]he approved final plat and corners marked is the best place to conclude business."
 {¶ 6} Luers refused to sign the release until he could consult with his attorney. On October 2, 2001, Luers' attorney went to Ballinger's office, where Ballinger told him that in order to obtain the final plat, Luers would now have to sign both the Release and Termination of Services, and an "Addendum." The proposed Addendum stated that "Ballinger on further reflection realized" that the $2,000 contract price covered only the location of the boundaries, and not the entire job. The addendum further stated that:
 {¶ 7} "The fair and reasonable fee for the engineering and surveying services that has [sic] been received is $4587.78 of which $800.00 had been paid.
 {¶ 8} "The balance due of $3,787.78 will be tendered by certified check. Upon receipt Ballinger will seal and sign the record plat."
 {¶ 9} Luers refused to sign the Release and Termination of Services or the Addendum, and refused to pay the additional $2,587.78 that Ballinger had sought to add to the contract price with the Addendum. Luers contracted with Paul A. Rodenbeck, a registered engineer and surveyor, to complete work on the project at a cost of $3,460. Rodenbeck estimated that the work Ballinger had completed reduced his work by 25 percent to 35 percent. Rodenbeck subsequently sent a letter to the Ohio Registration Board of Engineering and Surveyors, regarding Ballinger's proposed final plat of Timberwind Subdivision. In the letter, Rodenbeck cited a potential violation of the "Minimum Standards for Boundary Surveys," and enumerated numerous inconsistencies between Ballinger's unrecorded final plat, and Rodenbeck's final plat and Luers' deed.
 {¶ 10} On October 15, 2001, Ballinger filed an affidavit for a mechanic's lien on the property, claiming he was owed $3,787.78, for engineering and surveying services. Luers obtained a release of the mechanic's lien by posting a $7,575.56 bond, at a cost of $700, including attorney fees. On January 16, 2002, Luers had Ballinger served with a notice to commence suit.
 {¶ 11} On March 19, 2002, Ballinger filed a complaint against Luers, seeking $3,787 in damages for unjust enrichment, and additional $3,787 for damages to his health and professional reputation. Luers filed a counterclaim for breach of contract, slander to title, and unjust enrichment. The matter was referred to a magistrate.
 {¶ 12} In January 2003, the magistrate held a hearing on the matter. On March 6, 2003, he issued a decision, finding against Ballinger and in favor of Luers, with regards to their respective claims. The magistrate determined that Luers was entitled to judgment in the amount of $2,260 on his breach of contract claim, plus prejudgment and post-judgment interest, and $700 for slander of title, with post-judgment interest. Ballinger filed objections to the magistrate's decision. On April 15, 2003, the trial court overruled Ballinger's objections after noting that Ballinger had failed to file a transcript of proceedings as required by Civ.R. 53. The trial court adopted the magistrate's findings of fact and conclusions of law as its own final order.
 {¶ 13} Ballinger now appeals from the trial court's decision and raises several assignments of error.
 Assignment of Error No. 1 {¶ 14} "The Magistrate (trial court) correctly found facts but came to the wrong conclusions."
 {¶ 15} Ballinger describes the issue presented for review as follows:
 {¶ 16} "The trial court effectively documentated [sic] appellants [sic] release [sic] but recission [sic] occurs two months earlier."
 {¶ 17} Although Ballinger's arguments are difficult to follow, he apparently is arguing that Luers, by virtue of his July 27, 2001 letter, rescinded the parties' contract before he breached it. He also asserts that Luers' letter imposed new contractual obligations upon him. Ballinger appears to be contending that this alleged rescission gave him the right to insist that Luers sign the Release and Termination of Services, and Addendum that he drafted. Further, he appears to be asserting that he had a right to collect against Luers under the theories of unjust enrichment and quantum meurit. We disagree with each of these arguments.
 {¶ 18} First, Luers' July 27, 2001 letter to Ballinger, demanding that a final plat, suitable for recordation, be produced by August 3, 2001, did not rescind the parties' agreement, nor was it an attempt by Luers to do so. Generally, in the absence of fraud, duress, undue influence, or mistake, one party to a contract cannot rescind it without the consent of the other. Cantor v. Cantor (P.C. 1959), 86 Ohio Law Abs. 452, 468, 15 O.O.2d 148, 155. Furthermore, when a contract fails to state a time by which a party's performance must be completed, the law provides that performance must be completed within a reasonable time, with the question of reasonableness to be determined from the surrounding facts and circumstances. Oil, Chem. AtomicWorkers Internatl. Union v. Martin Marietta Energy Sys., Inc.
(1994), 97 Ohio App.3d 364, 369.
 {¶ 19} Here, neither Luers nor Ballinger were permitted to unilaterally rescind or cancel the contract calling upon Ballinger to perform engineering and surveying services for Luers for $2,000. Luers' July 27, 2001 letter did attempt to establish a contract term that the parties had omitted from their initial negotiations, to wit: a deadline for the completion of Ballinger's performance. Ballinger says the August 3, 2001 deadline was "unrealistic to comply with." However, Luers never sought to enforce that deadline, and the parties appeared to have ignored it. Indeed, Ballinger did not have the final plat prepared until mid to late September 2001. Moreover, Luers' mention of a $1,200 payment in his July 27, 2001 letter certainly did not, as Ballinger claims, represent part of a "new contract." Instead, the $1,200 merely referred to the remaining balance that Luers owed on the $2,000 contract price upon which the parties had previously agreed. Finally, Luers' threat to bring complaints against Ballinger with agencies such as the Better Business Bureau did not constitute an attempt to rescind the parties' contract; instead, Luers was merely attempting to persuade Ballinger to fulfill his promises under their agreement.
 {¶ 20} We also agree with the magistrate's conclusion that Luers was not obligated to sign the Release and Termination of Services and Addendum drafted by Ballinger, or to pay an additional $2,587.78 above and beyond the $2,000 contract price, upon which the parties had already agreed. "A release is a contract that requires an offer, acceptance, and consideration like any other contract." Barnes v. Ricotta (2001),142 Ohio App.3d 560, 566. "It is elementary that neither the promise to do a thing, nor the actual doing of it will constitute a sufficient consideration to support a contract if it is merely a thing which the party is already bound to do, either by law or a subsisting contract with the other party." Rhoades v. Rhoades (1974),40 Ohio App.2d 559, 562.
 {¶ 21} Here, Ballinger was already obligated to provide Luers with a signed plat, suitable for recordation; therefore, his promise to provide Luers with a final plat once he signed the Release and Termination of Services cannot serve as adequate consideration for Luers' signing the release. As the magistrate stated, Luers "was under no obligation to sign the release and was entirely justified in refusing to be held up" by Ballinger.
 {¶ 22} Ballinger also was not entitled to recover under the doctrines of unjust enrichment or quantum meruit. "These doctrines give rise to obligations imposed by law, irrespective of the intentions of the parties, in order to prevent an injustice when one party retains a benefit from another's labor. [Citations omitted.] The doctrines are inapplicable if an express agreement existed concerning the services for which compensation is sought; the parameters of the agreement limit the parties' recovery, in the absence of bad faith, fraud or illegality."Pawlus v. Bartrug (1996), 109 Ohio App.3d 796, 800. (Citation omitted.)
 {¶ 23} Here, an express agreement existed between Ballinger and Luers regarding the engineering and surveying services that Ballinger was to provide. The agreement called upon Ballinger to provide Luers with a final plat for his property that was suitable for recordation, in exchange for $2,000. Therefore, the doctrines of unjust enrichment and quantum meruit do not apply to this case.
 {¶ 24} Ballinger's first assignment of error is overruled.
 Assignment of Error No. 2 {¶ 25} "Plaintiff/Appellant has a constitutional right to a mechanic's lien" [sic.]
 {¶ 26} Ballinger argues that he has a right to a mechanic's lien under the Ohio Constitution, and that the magistrate erred by holding that engineers and surveyors are not entitled to avail themselves of the protections of the mechanic's lien statute in this state. However, this assignment of error has been rendered moot by our resolution of Ballinger's first assignment of error. Specifically, assuming for the sake of argument that engineers and surveyors like Ballinger should be permitted to avail themselves of the protections and benefits of this state's mechanic's lien statute, Ballinger still could not recover anything from Luers under the facts present here, since he failed to show that Luers, or anyone else for that matter, owes him anything for the engineering and surveying services he provided for the project in question.
 {¶ 27} Ballinger's second assignment of error is overruled.
 {¶ 28} Ballinger has listed a third and fourth assignment of error under the table of contents in his appellate brief, but he has failed to provide an argument in support of either one. This failure amounts to a violation of App.R. 16(A)(7), which requires an appellant to include in his or her brief "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." However, even if we ignored this violation and addressed Ballinger's final two assignments of error, we would still overrule them as follows:
 Assignment of Error No. 3 {¶ 29} "The Magistrates [sic] finding [sic] of fact are not in accord with testimony and exhibits."
 {¶ 30} Because Ballinger failed to file a transcript of the proceedings, he is precluded from challenging on appeal the magistrate's findings of fact, which were adopted by the trial court. Specifically, Civ.R. 53(E)(3)(b) provides that objections to findings of fact must be supported by a transcript of all the evidence submitted to the magistrate relevant to that fact. This rule prohibits a party from assigning as error the trial court's adoption of any finding of fact unless the party has objected to that finding under Civ.R. 53.
 {¶ 31} Ballinger's third assignment of error is overruled.
 Assignment of Error No. 4 {¶ 32} "Facts not considered in evidence led to rejection of quantum meruit."
 {¶ 33} Ballinger states that the trial court erred by rejecting his quantum meruit and unjust enrichment claims. We reject this argument for the same reasons stated in our response to Ballinger's first assignment of error.
 {¶ 34} Ballinger's fourth assignment of error is overruled.
 {¶ 35} The trial court's judgment is affirmed.
VALEN, P.J., and WALSH, J., concur.