MARY E. L. WELLINGTON vs. CHARLES B. RUGG,
administrator.

Worcester.    September 26, 1922. — October 18, 1922.

Present: BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Contract,* Antenuptial agreement, Validity. *Equity Jurisdiction,* To set aside
contract for fraud.    *Fraud.*

An antenuptial agreement between a man seventy-six years of age and a woman
whom he was about to marry recited that the parties desired "in the contem-
plation of marriage with each other, to effect an antenuptial agreement" and,
among many other things, provided that, at the request of the man during
coverture and at the request of his executors, administrators, devisees or heirs
after his death, the woman would release all rights in his real estate without
compensation; that the man "may dispose of all of his property, both real and
personal, that he may have at time of such marriage, or may thereafter acquire
during said marriage, by his last will to any legatee or legatees, devisee or
devisees he may select, other than the said . . . [woman] and in default of
such will, his entire estate, both real and personal, shall descend according to
the statutes then in force relative to the distribution of intestate estates, to the
exclusion however, of the said . . . [woman] who shall in no event take any
part as heir, except as hereinafter stated. . . . That the said . . . [man]
shall, in further consideration, and in lieu of all dower and other rights of
said . . . [woman] give and bequeath in his last will the sum of $5,000 to the
said . . . [woman]; — the above sum to be paid to her within six (6) months
after his decease." The parties were married the day after the execution of
the instrument and lived together until, six years later, the man died intestate
and without having paid or secured to the woman the sum of $5,000 and without
having made for her any provision outside the antenuptial agreement. The
woman by a bill in equity against the administrator of the man's estate sought
to have the agreement declared void for lack of consideration and for fraud.
The defendant demurred on the grounds of want of equity and of the existence
of an adequate remedy at law. *Held,* that

(1) The agreement was an executory bilateral contract supported by the
consideration of the bilateral promises of the parties;

(2) The failure of the man to make the promised testamentary provision for
the woman was not a ground for setting the contract aside: it entitled the
woman to maintain an action at law for breach of the contract;

(3) An alleged intent on the part of the man not to carry out the contract did
not entitle the plaintiff to have the agreement set aside, such intent not affecting
the plaintiff's right to the enforcement of the agreement by an action at law for
damages resulting from its breach;

(4) An allegation in the bill, that the man "concealed" the amount of his
property, in the absence of anything to show that he made false representations
respecting it or prevented the plaintiff from obtaining whatever facts she de-

sired concerning its character or value, stated no ground for setting the agreement aside by reason of fraud and false representations;

(5) Notwithstanding the confidential relations between the parties, a simple failure of the man voluntarily to disclose the amount of his property did not constitute actionable fraud;

(6) Promises by the man, alleged to have been made as inducements to the woman to enter into the agreement, that he would amply and fully provide for her "in a pecuniary way, in addition to and apart from the provision made in said antenuptial agreement" and that he would arrange and provide that she should always during her lifetime have a home and food in the house in which he and they were then living, title to which house, however, he had theretofore and to her knowledge conveyed to his two daughters, even if looked upon as representations by the man as to intentions which he did not have, would not have made him liable in an action of tort for deceit and were not grounds for setting aside the agreement; nor could such promises have any effect to vary the contract in writing afterwards made;

(7) An allegation in the bill that the man falsely had represented to the woman that he "had established trusts for his daughters, and had money enough outside of said trusts to make further provisions for her," in the absence of an allegation that he did not retain property amply sufficient to enable him to perform the contract and make any further provision, called for by the contract, that the plaintiff might have deemed herself entitled to, stated no ground for setting aside the agreement;

(8) An allegation in the bill, that the decedent falsely represented to the plaintiff that "he intended to do right by the plaintiff, . . . to make further provisions for her," and that "he intended to be very generous by the plaintiff," were too general, vague and indefinite to amount to false representations entitling the plaintiff to have the agreement set aside;

(9) Allegations in the bill that the man falsely represented to the woman and assured her "that the amount they had agreed upon and named in said antenuptial agreement, to wit, $5,000, was a fair proportion of his estate," whereas at that time his estate was worth not less than $400,000, presented the question of fact whether $5,000 was a "fair proportion of his estate;" and it could not be said as a matter of law either that such representations were not false or that, if false, they could not be found to have been a material inducement influencing the woman in deciding thereafter to sign the agreement;

(10) The alleged false representation last described being that $5,000 was a fair proportion of the man's estate, and not being that it would be a fair proportion of what the woman was entitled to receive from the man's property in consideration of her entering into the agreement, its falsity might be found sufficient to avoid the agreement although the bill alleged that before the representation was made the parties had agreed upon $5,000 as the amount which she was to receive and she had declined an offer of $12,000 because she did not wish to cause trouble with his children "or that it should appear that her object in marrying him was a mercenary one;"

(11) False representations and promises made by the man subsequent to the execution of the agreement formed no basis for avoiding the agreement, since they had no bearing upon the issue whether the plaintiff was induced to enter into the agreement by reason of the fraud practised upon her by the man;

(12) The agreement might be set aside by reason of false representations of

the man inducing the woman to enter into it although, the marriage having been consummated, the parties could not be put *in statu quo;*

(13) The demurrer being general and the bill being maintainable on one of its allegations, the demurrer must be overruled.

BILL IN EQUITY, filed in the Supreme Judicial Court on December 2, 1920, and afterwards amended, seeking to have set aside an antenuptial agreement between the defendant's intestate, Charles H. Wellington, late of Oxford, and the plaintiff, then Mary E. Lamprey.

The agreement, which was under seal and was dated March 14, 1914, was, exclusive of the *in testimonum* clause and signatures, as follows:

"Whereas Charles H. Wellington of Oxford in the Commonwealth of Massachusetts, and Mary E. Lamprey of Oxford in Commonwealth aforesaid, desire in the contemplation of marriage with each other, to affect an ante-nuptial agreement conformably to law; Now, Therefore, they mutually covenant and agree that upon solemnization of said marriage:

"1. The said Charles H. Wellington shall hold in his own name and right and have the entire disposition of all the estate, both real and personal, he shall possess at the time of the marriage; and also such other estate, both real and personal, as he may thereafter in any way acquire during marriage.

"2. That the said Charles H. Wellington may dispose of all of his property, both real and personal, that he may have at time of such marriage, or may thereafter acquire during said marriage, by his last will to any legatee or legatees, devisee or devisees he may select, other than the said Mary E. Lamprey, and in default of such will, his entire estate, both real and personal, shall descend according to the statutes then in force relative to the distribution of intestate estates, to the exclusion however, of the said Mary E. Lamprey, who shall in no event take any part as heir, except as hereinafter stated.

"3. The said Mary E. Lamprey shall during coverture, at her husband's request, and, after his decease, if she survives him, at the request of his executors, administrators, devisees or heirs, relinquish by deed dower in any and all of his real estate, and all her rights therein, and she shall receive no compensation for such relinquishment.

"4. That the said Charles H. Wellington shall, in further consideration, and in lieu of all dower and other rights of said Mary E. Lamprey, give and bequeath ,in his last will the sum of five thousand ($5,000) to the said Mary E. Lamprey; — the above sum to be paid to her within six (6) months after his decease.

"5. This agreement shall be and is a bar both in law and equity to any claim of Mary E. Lamprey, if she survives Charles H. Wellington, may make to any part of the realty or personalty, except as hereinbefore stated, of Charles H. Wellington."

The defendant, in an amended answer, demurred to the amended bill on the grounds that it disclosed no ground for relief in equity and that, if it disclosed any cause of action in favor of the plaintiff, her remedy was an action at law. The suit was heard upon the demurrer by *Jenney, J.,* who overruled the demurrer and reported the suit to the full court for determination.

*H. S. Davis,* for the defendant.

*M. M. Taylor,* for the plaintiff.

CROSBY, J. This is a suit in equity to set aside an antenuptial agreement, and is reported to the full court by a single justice for determination upon the demurrer embodied in the answer to the substituted bill. The agreement, a copy of which dated March 14, 1914, is annexed to the bill, recites that Charles H. Wellington (the defendant's intestate) and the plaintiff "desire in the contemplation of marriage with each other, to effect an antenuptial agreement." The second paragraph of the agreement provides as follows: "2. That the said Charles H. Wellington may dispose of all of his property, both real and personal, that he may have at time of such marriage, or may thereafter acquire during said marriage, by his last will to any legatee or legatees, devisee or devisees he may select, other than the said Mary E. Lamprey, and.in default of such will, his entire estate, both real and personal, shall descend according to the statutes then in force relative to the distribution of intestate estates, to the exclusion however, of the said Mary E. Lamprey, who shall in no event take any part as heir, except as hereinafter stated." It is provided by paragraph 4 "That the said Charles H. Wellington shall, in further consideration, and in lieu of all dower and other rights of said Mary E. Lamprey, give and bequeath in his last will the sum of five thou-

sand ($5,000) to the said Mary E. Lamprey; — the above sum to be paid to her within six (6) months after his decease."

On March 15, 1914, the parties were married, and they lived together until the decease of the husband on June 17, 1920. He died at the age of about eighty years intestate, without having paid or secured to the plaintiff the sum of $5,000 or having made any provision for her outside the antenuptial agreement. The plaintiff contends (1) that on account of the fraud practised upon her by the intestate, as alleged in the bill, the agreement never had any legal effect or validity; and (2) that if it ever was a valid instrument there was a total failure of consideration, as the intestate failed to pay to her the sum agreed, and did not make a will or otherwise give to her anything in lieu of $5,000.

The agreement is an executory bilateral contract, and the failure of the intestate to carry out his promise is not a ground for setting the contract aside; the consideration on his part is his promise to give the plaintiff $5,000 by his will. The result of his failure to perform entitles the plaintiff to maintain an action for damages for breach of the contract. *Marble Co.* v. *Ripley*, 10 Wall. 339, 355. *Howe* v. *Watson*, 179 Mass. 30. *Clarke* v. *Treasurer & Receiver General*, 226 Mass. 301, 304. *Gardner* v. *Knight*, 124 Ala. 273. This is the ordinary rule as applied to contracts generally and it is also applicable to antenuptial agreements. *Turner* v. *Warren*, 160 Penn. St. 336, 344. *Bibelhausen* v. *Bibelhausen*, 159 Wis. 365, 369.

The allegation that the intestate did not intend to carry out the contract in no way affects the rights of the plaintiff thereunder. His intention is immaterial; if he had performed the contract she would have received a legacy of $5,000; as he failed to do so she is entitled to recover from his estate precisely the same amount. By the express language of the contract the rights and obligations of the parties are mutually independent. Paragraph 2, above quoted, provides that the plaintiff shall take no part of the estate except $5,000 whether her husband dies testate or intestate; it cannot successfully be contended that as he did not make a will there is a failure of consideration; therefore she is not entitled to have the agreement set aside on that ground. *Naill* v. *Maurer*, 25 Md. 532. Such a contract may be enforced by her after his death. *Miller* v. *Goodwin*, 8 Gray, 542. *Freeland* v. *Freeland*,

128 Mass. 509. *Collins* v. *Collins,* 212 Mass. 131. *Eaton* v. *Eaton,* 233 Mass. 351, 365.

The plaintiff also seeks to set aside the agreement on the ground that she was induced to enter into it by reason of the false representations by the intestate. It was executed at a time when the parties had mutually become engaged and had promised to marry each other. The bill alleges that "a great mutual trust, confidence and respect existed between the plaintiff and the said Wellington at the time of the making of the antenuptial agreement and of their marriage." In the absence of such an averment, it may be assumed that the parties to such a contract occupied a relation of trust and confidence and that they were bound to act fairly and in good faith in their dealings with each other. The rule is stated in *Eaton* v. *Eaton,* 233 Mass. 351, recently decided by this court, by the present Chief Justice, at page 371, as follows: "The participants in an antenuptial contract do not stand at arm's length with reference to each other. Their relation is one of highest trust and confidence. It demands the utmost good faith on the part of each. This is not only a necessary concomitant of the execution of such an instrument, but the performance of its stipulations must also be in the same spirit."

In paragraph 5, the allegation that the intestate "concealed" the amount of his property in the absence of anything to show that he made false representations respecting it or prevented the plaintiff from obtaining whatever facts she desired concerning its character or value is immaterial. The failure on his part to inform her of what he owned falls far short of fraudulent concealment. So far as appears, had she so wished, she could have made inquiry of him, and also could have made such investigation as she saw fit before making the contract. Notwithstanding the confidential relations between the parties, the simple failure voluntarily to disclose the amount of his property does not constitute actionable fraud. Bower on Actionable Non-Disclosure, § 135. *Potts* v. *Chapin,* 133 Mass. 276. *Windram Manuf. Co.* v. *Boston Blacking Co.* 239 Mass. 123. In the case last cited it was said at page 126, "Mere silence on the part of the defendant is all that is charged. But failure to disclose known facts does not amount to fraud, and is not the basis of an action for deceit, unless the parties stand in such relation to one another that one is under

legal or equitable obligation to communicate the facts to the other."

In paragraph 7 of the bill it is alleged that the intestate to induce the plaintiff to enter into the agreement falsely and fraudulently promised the plaintiff: "a. That he would amply and fully provide for the plaintiff in a pecuniary way, in addition to and apart from the provision made in said antenuptial agreement. b. That he would arrange and provide that the plaintiff should always during her lifetime have a home and food in the house in which he and they were then living, title to which house, however, he had theretofore, and to the knowledge of the plaintiff, conveyed to the two daughters of said Wellington." These allegations amount merely to promises relating to what he would do for the plaintiff in the future. If such statements could be considered as representations, it is plain from their nature that they could not be true or false at the time they were made. The distinction between a promise that something shall be done in the future and a representation of an existing fact in a matter susceptible of knowledge, is well recognized. It is plain that the promises (or representations if they may be properly so called) made as an inducement to the contract will not render the maker liable on the ground of fraud. *Knowlton* v. *Keenan*, 146 Mass. 86. *Dawe* v. *Morris*, 149 Mass. 188. *Brown* v. *C. A. Pierce & Co. Inc.* 229 Mass. 44, 47. *Lynch* v. *Palmer*, 237 Mass. 150, 152. Besides, the alleged promises made before the contract was entered into were variations and additions thereto, and for that reason would not be enforceable. *Boston Consolidated Gas Co.* v. *Folsom*, 237 Mass. 565. *Spevack* v. *Budish*, 238 Mass. 215. The alleged promise set forth in paragraph 7 a to "amply and fully provide for the plaintiff in a pecuniary way" was too indefinite and general to bind the promisor. *Cheney Bigelow Wire Works* v. *Sorrell*, 142 Mass. 442. *Marble* v. *Standard Oil Co.* 169 Mass. 553, 560. *Russell* v. *Russell*, 15 Dick. 282.

As to the alleged promise set forth in paragraph 7 b the plaintiff was not justified in relying on it, as she knew that the house therein referred to had been conveyed to the testator's daughters and therefore he could not make a lawful agreement with respect to its occupancy without the consent of his daughters, which does not appear.

The allegation in paragraph 7 c that the decedent represented to the plaintiff that he "had established trusts for his daughters, and had money enough outside of said trusts to make further provisions for her" if false is immaterial, as it is not alleged, nor does it appear to be claimed, that he did not retain property amply sufficient to enable him to perform the contract and make any further provision the plaintiff might have deemed herself entitled to.   The other allegations in this paragraph that the decedent falsely represented to the plaintiff that "he intended to do right by the plaintiff, . . . to make further provisions for her," and that "he intended to be very generous by the plaintiff" are too general, vague and indefinite to amount to false representations.

The allegation in paragraph 7 d that the intestate falsely represented to the plaintiff and assured her "that the amount they had agreed upon and named in said antenuptial agreement, to wit, $5,000, was a fair proportion of his estate" stands upon a different footing; it was a representation of a material fact; although it appears that before the representation was made the parties had agreed upon $5,000 as the amount which she was to receive and she had declined an offer of $12,000 because she did not wish to cause trouble with his children "or that it should appear that her object in marrying him was a mercenary one," still it cannot be said as matter of law that the representation so made could not be found to have been a material inducement which influenced her in deciding thereafter to sign the antenuptial agreement; and it might rationally have been inferred that the representation was made for that purpose.   The question is whether upon the averment of the bill that the decedent was worth not less than $400,000 the representation that $5,000 was a "fair proportion of his estate" could be found to be fraudulent.   We are of opinion that it could not be ruled as matter of law that the representation was not false. It presents purely a question of fact.   The alleged statement is not that $5,000 would be a fair proportion of what the plaintiff was entitled to receive from the decedent's property in consideration of her entering into the agreement, but it is whether $5,000 is a fair proportion of his estate of $400,000.   It may fairly be assumed that he was able with substantial accuracy to determine the value of his property and that such estimate would be based not upon conjecture, mere opinion, judgment or estimate, but

upon information susceptible of reasonably precise and definite knowledge. In a word the issue whether $5,000 was a fair proportion of his whole estate was material upon the question to be decided by her whether she would or not execute the agreement.

In paragraph 10 it is averred that subsequently to making the antenuptial agreement and marriage the intestate "promised and assured the plaintiff that he would provide for her in a pecuniary way; that he had actually fully and amply provided for her in a pecuniary way; that she would be well taken care of; and that she would have ample money for her maintenance and in addition to the provisions which he had made under and by virtue of the terms of said antenuptial agreement." Manifestly any representations made subsequently to the execution of the contract would have no bearing upon the issue whether she was induced to enter into it by reason of the fraud practised upon her by the decedent; although we do not mean to intimate that such representations or promises would be material if made before the contract was executed.

It is argued by the defendant that, even if the averments of the bill are sufficient to show fraud, the contract cannot be set aside on that ground unless the parties can be put *in statu quo;* that, the marriage having been consummated, the position of the parties has changed and thereby they relinquished their option to break the engagement and surrendered the right which otherwise would exist to set aside the agreement on the ground of fraud. We cannot agree with that conclusion. If that contention is sound, then no agreement of this kind can ever be set aside no matter how great the fraud may be which one of the parties may have practised upon the other, unless suit is brought for that purpose before the marriage is consummated. No case has been called to our attention which so holds, nor have we been able to find authority to that effect.

It results that the averments contained in paragraph 7 d are not demurrable, and as we are dealing with a general demurrer it must be overruled.

*Ordered accordingly.*