HOMER GOODWIN *vs.* RODOLPHE L. AGASSIZ & another.

Suffolk.   November 14, 1932. — June 27, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Corporation,* Officers and agents, Purchase of shares by director.   *Fraud.*

Where a director of a mining corporation purchased shares of its stock from a stockholder through a broker on the stock exchange, there being no communication between the director and the stockholder and neither party to the sale knowing the identity of the other, the director was not guilty of actionable wrong entitling the stockholder to maintain a suit in equity for a rescission of the sale, redelivery of the shares or an accounting by the director by reason of the circumstances that, shortly before the sale, geological explorations on the lands of the corporation had been made and had been completed unsuccessfully; that the stockholder, having read an article, for the publication of which the director was not responsible, about the termination of such explorations, immediately sold the shares; that the director had had knowledge of a mere opinion previously formed by an expert geologist as to the possible existence of minerals in the region where such lands were located; that the director believed that the theory was meritorious and should be tested and that if there were merit in the theory the price of the corporation's stock in the market would go up; and that he thereupon so purchased the shares in question and many other shares without having disclosed the existence of the theory to the stockholder or to the other stockholders and without having said anything to anybody as to the reasons actuating him, there having been no actual fraud practised by him upon the stockholder in question nor breach of duty owed by the director to the corporation nor harm to it; and a decree dismissing the bill was proper.

Additional reasons for dismissal of the suit above described lay in the facts that the plaintiff stockholder was no novice in such matters, was a member of the stock exchange and acted upon his own judgment in selling his shares, without having made inquiries of the director or other officers of the corporation.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on September 17, 1928, described in the opinion.

The suit was ordered transferred to the Superior Court and there was heard by *C. H. Donahue,* J. Material findings by the judge are stated in the opinion. By his order, a final decree dismissing the bill was entered. The plaintiff appealed.

*W. Powers,* (*C. R. Cabot* with him,) for the plaintiff.

*E. F. McClennen,* for the defendant Agassiz.

RUGG, C.J. A stockholder in a corporation seeks in this suit relief for losses suffered by him in selling shares of stock in Cliff Mining Company by way of accounting, rescission of sales, or redelivery of shares. The named defendants are MacNaughton, a resident of Michigan not served or appearing, and Agassiz, a resident of this Commonwealth, the active party defendant.

The trial judge made findings of fact, rulings, and an order dismissing the bill. There is no report of the evidence. The case must be considered on the footing that the findings are true. The facts thus displayed are these: The defendants, in May, 1926, purchased through brokers on the Boston stock exchange seven hundred shares of stock of the Cliff Mining Company which up to that time the plaintiff had owned. Agassiz was president and director and MacNaughton a director and general manager of the company. They had certain knowledge, material as to the value of the stock, which the plaintiff did not have. The plaintiff contends that such purchase in all the circumstances without disclosure to him of that knowledge was a wrong against him. That knowledge was that an experienced geologist had formulated in writing in March, 1926, a theory as to the possible existence of copper deposits under conditions prevailing in the region where the property of the company was located. That region was known as the mineral belt in northern Michigan, where are located mines of several copper mining companies. Another such company, of which the defendants were officers, had made extensive geological surveys of its lands. In consequence of recommendations resulting from that survey, exploration was started on property of the Cliff Mining Company in 1925. That exploration was ended

in May, 1926, because completed unsuccessfully, and the equipment was removed. The defendants discussed the geologist's theory shortly after it was formulated. Both felt that the theory had value and should be tested, but they agreed that, before starting to test it, options should be obtained by another copper company of which they were officers on land adjacent to or nearby in the copper belt, that if the geologist's theory were known to the owners of such other land there might be difficulty in securing options, and that that theory should not be communicated to any one unless it became absolutely necessary. Thereafter, options were secured which, if taken up, would involve a large expenditure by the other company. The defendants both thought, also, that, if there was any merit in the geologist's theory, the price of Cliff Mining Company stock in the market would go up. Its stock was quoted and bought and sold on the Boston stock exchange. Pursuant to agreement, they bought many shares of that stock through agents on joint account. The plaintiff first learned of the closing of exploratory operations on property of the Cliff Mining Company from an article in a paper on May 15, 1926, and immediately sold his shares of stock through brokers. It does not appear that the defendants were in any way responsible for the publication of that article. The plaintiff did not know that the purchase was made for the defendants and they did not know that his stock was being bought for them. There was no communication between them touching the subject. The plaintiff would not have sold his stock if he had known of the geologist's theory. The finding is express that the defendants were not guilty of fraud, that they committed no breach of duty owed by them to the Cliff Mining Company, and that that company was not harmed by the nondisclosure of the geologist's theory, or by their purchases of its stock, or by shutting down the exploratory operations.

The contention of the plaintiff is that the purchase of his stock in the company by the defendants without disclosing to him as a stockholder their knowledge of the geologist's theory, their belief that the theory had value,

the keeping secret the existence of the theory, discontinuance by the defendants of exploratory operations begun in 1925 on property of the Cliff Mining Company and their plan ultimately to test the value of the theory, constitute actionable wrong for which he as stockholder can recover.

The trial judge ruled that conditions may exist which would make it the duty of an officer of a corporation purchasing its stock from a stockholder to inform him as to knowledge possessed by the buyer and not by the seller, but found, on all the circumstances developed by the trial and set out at some length by him in his decision, that there was no fiduciary relation requiring such disclosure by the defendants to the plaintiff before buying his stock in the manner in which they did.

The question presented is whether the decree dismissing the bill rightly was entered on the facts found.

The directors of a commercial corporation stand in a relation of trust to the corporation and are bound to exercise the strictest good faith in respect to its property and business. *Elliott* v. *Baker,* 194 Mass. 518, 523. *Beaudette* v. *Graham,* 267 Mass. 7. *L. E. Fosgate Co.* v. *Boston Market Terminal Co.* 275 Mass. 99, 107. The contention that directors also occupy the position of trustee toward individual stockholders in the corporation is plainly contrary to repeated decisions of this court and cannot be supported. In *Smith* v. *Hurd,* 12 Met. 371, 384, it was said by Chief Justice Shaw: "There is no legal privity, relation, or immediate connexion, between the holders of shares in a bank, in their individual capacity, on the one side, and the directors of the bank on the other. The directors are not the bailees, the factors, agents or trustees of such individual stockholders." In *Stewart* v. *Joyce,* 201 Mass. 301, 311, 312, and *Lee* v. *Fisk,* 222 Mass. 424, 426, the same principle was reiterated. In *Blabon* v. *Hay,* 269 Mass. 401, 407, occurs this language with reference to sale of stock in a corporation by a stockholder to two of its directors: "The fact that the defendants were directors created no fiduciary relation between them and the plaintiff in the matter of the sale of his stock."

The principle thus established is supported by an imposing weight of authority in other jurisdictions. *Steinfeld* v. *Nielsen,* 15 Ariz. 424. *Bawden* v. *Taylor,* 254 Ill. 464. *Tippecanoe County Commissioners* v. *Reynolds,* 44 Ind. 509. *Waller* v. *Hodge,* 214 Ky. 705. *Buckley* v. *Buckley,* 230 Mich. 504. *Dutton* v. *Barnes,* 162 Minn. 430. *Crowell* v. *Jackson,* 24 Vroom, 656. *Carpenter* v. *Danforth,* 52 Barb. S. C. 581. *Shaw* v. *Cole Manuf. Co.* 132 Tenn. 210. *White* v. *Texas Co.* 59 Utah, 180, 188. *Percival* v. *Wright,* [1902] 2 Ch. D. 421. *Tackey* v. *McBain,* [1912] A. C. 186. A rule holding that directors are trustees for individual stockholders with respect to their stock prevails in comparatively few States; but in view of our own adjudications it is not necessary to review decisions to that effect. See, for example, *Oliver* v. *Oliver,* 118 Ga. 362; *Dawson* v. *National Life Ins. Co. of America,* 176 Iowa, 362; *Stewart* v. *Harris,* 69 Kans. 498. See, also, for collection of authorities, 14A C. J. § 1896; 27 Yale L. J. 731; 32 Yale L. J. 637.

While the general principle is as stated, circumstances may exist requiring that transactions between a director and a stockholder as to stock in the corporation be set aside. The knowledge naturally in the possession of a director as to the condition of a corporation places upon him a peculiar obligation to observe every requirement of fair dealing when directly buying or selling its stock. Mere silence does not usually amount to a breach of duty, but parties may stand in such relation to each other that an equitable responsibility arises to communicate facts. *Wellington* v. *Rugg,* 243 Mass. 30, 35. Purchases and sales of stock dealt in on the stock exchange are commonly impersonal affairs. An honest director would be in a difficult situation if he could neither buy nor sell on the stock exchange shares of stock in his corporation without first seeking out the other actual ultimate party to the transaction and disclosing to him everything which a court or jury might later find that he then knew affecting the real or speculative value of such shares. Business of that nature is a matter to be governed by practical rules. Fiduciary

obligations of directors ought not to be made so onerous that men of experience and ability will be deterred from accepting such office. Law in its sanctions is not coextensive with morality. It cannot undertake to put all parties to every contract on an equality as to knowledge, experience, skill and shrewdness. It cannot undertake to relieve against hard bargains made between competent parties without fraud. On the other hand, directors cannot rightly be allowed to indulge with impunity in practices which do violence to prevailing standards of upright business men. Therefore, where a director personally seeks a stockholder for the purpose of buying his shares without making disclosure of material facts within his peculiar knowledge and not within reach of the stockholder, the transaction will be closely scrutinized and relief may be granted in appropriate instances. *Strong* v. *Repide*, 213 U. S. 419. *Allen* v. *Hyatt*, 30 T. L. R. 444. *Gammon* v. *Dain*, 238 Mich. 30. *George* v. *Ford*, 36 App. D. C. 315. See, also, *Old Dominion Copper Mining & Smelting Co.* v. *Bigelow*, 203 Mass. 159, 194–195. The applicable legal principles "have almost always been the fundamental ethical rules of right and wrong." *Robinson* v. *Mollett*, L. R. 7 H. L. 802, 817.

The precise question to be decided in the case at bar is whether on the facts found the defendants as directors had a right to buy stock of the plaintiff, a stockholder. Every element of actual fraud or misdoing by the defendants is negatived by the findings. Fraud cannot be presumed; it must be proved. *Brown* v. *Little, Brown & Co. (Inc.)* 269 Mass. 102, 117. The facts found afford no ground for inferring fraud or conspiracy. The only knowledge possessed by the defendants not open to the plaintiff was the existence of a theory formulated in a thesis by a geologist as to the possible existence of copper deposits where certain geological conditions existed common to the property of the Cliff Mining Company and that of other mining companies in its neighborhood. This thesis did not express an opinion that copper deposits would be found at any particular spot

or on property of any specified owner. Whether that theory was sound or fallacious, no one knew, and so far as appears has never been demonstrated. The defendants made no representations to anybody about the theory. No facts found placed upon them any obligation to disclose the theory. A few days after the thesis expounding the theory was brought to the attention of the defendants, the annual report by the directors of the Cliff Mining Company for the calendar year 1925, signed by Agassiz for the directors, was issued. It did not cover the time when the theory was formulated. The report described the status of the operations under the exploration which had been begun in 1925. At the annual meeting of the stockholders of the company held early in April, 1926, no reference was made to the theory. It was then at most a hope, possibly an expectation. It had not passed the nebulous stage. No disclosure was made of it. The Cliff Mining Company was not harmed by the nondisclosure. There would have been no advantage to it, so far as appears, from a disclosure. The disclosure would have been detrimental to the interests of another mining corporation in which the defendants were directors. In the circumstances there was no duty on the part of the defendants to set forth to the stockholders at the annual meeting their faith, aspirations and plans for the future. Events as they developed might render advisable radical changes in such views. Disclosure of the theory, if it ultimately was proved to be erroneous or without foundation in fact, might involve the defendants in litigation with those who might act on the hypothesis that it was correct. The stock of the Cliff Mining Company was bought and sold on the stock exchange. The identity of buyers and seller of the stock in question in fact was not known to the parties and perhaps could not readily have been ascertained. The defendants caused the shares to be bought through brokers on the stock exchange. They said nothing to anybody as to the reasons actuating them. The plaintiff was no novice. He was a member of the Boston stock exchange and had kept a record of sales of Cliff Mining Company stock. He acted upon his own judgment in

selling his stock. He made no inquiries of the defendants or of other officers of the company. The result is that the plaintiff cannot prevail.

*Decree dismissing bill affirmed with costs.*