CHARLOTTE ROSENBERG *vs.* SAUL E. LIPNICK & another,
executors.

Middlesex. January 3, 1979. — March 30, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, & WILKINS, JJ.

*Contract*, Antenuptial agreement. *Husband and Wife*, Antenuptial
agreement.

Under the rule of *Wellington* v. *Rugg*, 243 Mass. 30 (1922), a plaintiff
seeking invalidation of an antenuptial agreement could not prevail
in the absence of proof that her deceased husband either misrepre-
sented or fraudulently concealed the extent of his assets prior to
execution of the agreement. [669-670]

In future cases involving antenuptial agreements drawn after the date
of this opinion, this court stated its intention to abandon the rule
in *Wellington* v. *Rugg*, 243 Mass. 30 (1922), to the extent it negates
any duty of disclosure and to hold that the parties by definition
occupy a confidential relationship and that the burden of disclosure
rests upon both of them. [670-673]

CIVIL ACTION commenced in the Probate Court for the
county of Middlesex on February 16, 1977.

The case was heard by *Sullivan*, J., on a master's re-
port.

The Supreme Judicial Court granted a request for di-
rect appellate review.

*George L. Cushing (Marc D. Greenbaum* with him) for
the plaintiff.

*John J. Murphy* for the defendants.

HENNESSEY, C.J. Charlotte Rosenberg brought this ac-
tion in the Probate Court against the executors of the
estate of Perry Rosenberg, her husband (decedent), seek-
ing invalidation of an antenuptial agreement executed by
her and the decedent and a declaration that she is enti-
tled to her statutory share of his estate and a widow's

allowance. On the plaintiff's motion, the action was referred to a master. The master made findings of fact and concluded that the agreement is valid and that the plaintiff is not entitled to a statutory share of the estate or to a widow's allowance. The Probate Court judge confirmed the master's report and entered judgment for the defendants. The plaintiff duly appealed.

The plaintiff argues, and the argument finds support in the record, that both the master and the judge viewed this court's decision in *Wellington* v. *Rugg*, 243 Mass. 30 (1922), as controlling. In that case the court held that a husband's simple failure voluntarily to disclose the value of his property prior to executing an antenuptial agreement was not sufficient to invalidate the agreement. Rather, the party seeking invalidation must show fraud.

The plaintiff filed an application for direct appellate review, asking this court to overrule *Wellington* and hold that (1) an antenuptial agreement which fails to make a full and fair provision for the wife is not enforceable if the husband failed to disclose his assets prior to execution of the agreement, and (2) the representatives of the husband have the burden of proving full and fair disclosure. We granted the plaintiff's application because of the importance of the issues involved.

Although we agree that the *Wellington* principles should be abandoned,[1] we do not think it wise to act retroactively. The *Wellington* decision has remained undisturbed law in this Commonwealth for over a half-century, and numerous agreements have undoubtedly been fashioned in reliance on its rule. Accordingly, we have reviewed this case for error under the law as it existed in 1959. We have discerned none and thus affirm the judgment for the defendants. However, we take this oppor-

---

[1] Of course, any rules that we might fashion instead would necessarily be framed in terms of the respective contractual positions of the parties, rather than in terms of "husband" and "wife." See art. 1 of the Declaration of Rights of the Massachusetts Constitution, as amended by art. 106.

tunity to delineate new rules that shall apply to antenuptial agreements executed after the publication date of this opinion.

The plaintiff, who was fifty-eight years old, met the decedent, who was sixty-nine years old, in February of 1958. Both were gainfully employed. The plaintiff was a widow, the decedent was a widower, and each had children by previous marriages. After a courtship of approximately eighteen months, the decedent proposed marriage and told the plaintiff that he would like her to sign an antenuptial agreement. The agreement provided that the plaintiff would accept $5,000 from the decedent's estate in lieu of dower or any other rights that she might have were she to survive him.

The plaintiff took the agreement to her brother, a practicing attorney, who asked her whether she had any knowledge of her prospective husband's resources. When she stated that she did not, he told her that he thought the agreement was unfair and called for some explanation. She expressed her desire to sign it, notwithstanding her brother's observations. As he did not want to advise her against the proposed marriage, her brother recommended that she ask the decedent to sign an agreement surrendering any claim against her estate in the event that he survived her. She responded that the decedent had already told her he wanted nothing from her, whereupon her brother drafted a second agreement by which the decedent had no claim to her estate. Both agreements were executed on October 29, 1959. The plaintiff and the decedent were married on November 7, 1959.

At the time of their marriage, the decedent owned a dwelling and a block of stores in Chelsea, Massachusetts. He occupied one of the stores from which he operated his business as an electrician. The block of stores was sold in 1974 for $20,000. The dwelling was sold in 1960; however, no evidence was introduced as to its sale price.

Samuel Shapiro, one of the defendant executors and the decedent's accountant, testified that in 1960 the dece-

dent received dividends from listed companies. Shapiro could not state the amount of such dividends. Neither could he remember whether the decedent received any interest on savings or what the decedent's income taxes were at that time.

The decedent died on July 4, 1976. His estate has an approximate total value of $119,000: $55,000 in stocks and bonds; $51,800 in mortgages, notes and cash; $12,000 in life insurance; and $200 in miscellaneous assets.

During their marriage, the decedent supported the plaintiff, although the plaintiff purchased some of her clothes with her own money. She continued to be employed at the time of the hearing and had assets totalling approximately $45,000, although her living expenses exceeded her income.

1. The plaintiff contends that the $5,000 to which she is entitled under the antenuptial agreement is grossly disproportionate to the amount to which she would have been entitled but for the antenuptial agreement. The plaintiff further contends that the agreement should have been declared void in the absence of compelling evidence that the agreement was fair when made or that the plaintiff had agreed to take the reduced share with full knowledge of the decedent's assets. The rule in *Wellington* v. *Rugg, supra,* is clearly contrary. That case holds that nothing short of proof of fraud will invalidate an antenuptial agreement, irrespective of the unfairness of the agreement's provisions. The following language is controlling: "[T]he allegation that the intestate 'concealed' the amount of his property in the absence of anything to show that he made false representations respecting it or prevented the plaintiff from obtaining whatever facts she desired concerning its character or value is immaterial. The failure on his part to inform her of what he owned falls far short of fraudulent concealment. So far as appears, had she so wished, she could have made inquiry of him, and also could have made such investigation as she saw fit before making the contract. Notwithstanding

the confidential relations between the parties, the simple failure voluntarily to disclose the amount of his property does not constitute actionable fraud." *Id.* at 35-36. Cf. *Anderson* v. *Anderson,* 354 Mass. 565 (1968) (finding fraud in antenuptial agreement purporting to limit the rights of the wife in the event of divorce).

Given our view that *Wellington* governs the rights of the parties now before us, we need not decide whether the agreement's provisions were manifestly unfair to the plaintiff.[2] The master found that the plaintiff failed to establish that the decedent either misrepresented or fraudulently concealed the extent of his assets prior to execution of the agreement. In light of the master's finding, which the judge confirmed and which is supported by the record, the plaintiff cannot prevail under the *Wellington* rule. Accordingly, we affirm the judgment for the defendants.

2. Massachusetts stands alone in requiring the party seeking invalidation of an antenuptial agreement to show fraud. See 2 A. Lindey, Separation Agreements and Ante-Nuptial Contracts § 90 (rev. ed. 1977); Annot., 27 A.L.R.2d 883-906 (1953 & Supp. 1978). The great majority of cases in other jurisdictions hold that the parties to an antenuptial agreement generally do not deal at arm's length. Rather, they occupy a relationship of mutual trust and confidence and as such must exercise the highest degree of good faith, candor, and sincerity in all matters bearing on the proposed agreement. 2 A. Lindey, *supra* at § 90-42-43. The burden is not on either party to inquire, but on each to inform for it is only by requiring full disclosure of the amount, character, and value of the parties' respective assets that courts can ensure intelligent waiver of the statutory rights involved. See, e.g., *Guhl* v. *Guhl,* 376 Ill. 100 (1941); *Megginson* v. *Megginson,* 367 Ill. 168 (1937); *Denison* v. *Dawes,* 121 Me. 402 (1922); *Hartz* v. *Hartz,* 248 Md. 47 (1967); *Kaufmann Estate,* 404

[2] The master made no finding of fact with respect to this issue.

Pa. 131 (1961); *McClellan Estate*, 365 Pa. 401 (1950). See generally Annot., 27 A.L.R.2d 883, §§ 3, 4 (1953 & Supp. 1978).

Although the *Wellington* court specifically acknowledged that a confidential relationship exists between parties to an antenuptial agreement, *Wellington* v. *Rugg*, *supra* at 36, its holding treats them as though they stood at arm's length. The decision cites G. S. Bower, Actionable Non-Disclosure § 135 (1915), *Potts* v. *Chapin*, 133 Mass. 276 (1882), and *Windram Mfg. Co.* v. *Boston Blacking Co.*, 239 Mass. 123 (1921), all of which speak to rights between parties functioning in a commercial context. *Wellington, supra* at 35. Quoting from *Windram*, the *Wellington* court at 36 stated: "Mere silence on the part of the defendant is all that is charged. But failure to disclose known facts does not amount to fraud, and is not the basis of an action for deceit, unless the parties stand in such relation to one another that one is under legal or equitable obligation to communicate the facts to the other." Although the court chose to view the confidential relationship between the parties in *Wellington* as not giving rise to an obligation to disclose, that case has been cited in subsequent opinions which impose a duty to disclose on parties occupying an obviously less delicate relationship. See, e.g., *Goodwin* v. *Agassiz*, 283 Mass. 358 (1933) (holding that the existence of a fiduciary relationship between corporate director and stockholder may give rise to a duty of disclosure).

While we have, in fairness, followed the *Wellington* case in the instant matter, we think that to the extent that *Wellington* negates any duty of disclosure, we should abandon that precedent in favor of the more enlightened rules of other jurisdictions. Thus, in future cases involving agreements drawn after the publication date of this opinion, we shall feel free to hold that the parties by definition occupy a confidential relationship and that the burden of disclosure rests upon both of them.

In judging the validity of such an antenuptial agreement, other relevant factors which we may consider are whether (1) it contains a fair and reasonable provision as measured at the time of its execution for the party contesting the agreement; (2) the contesting party was fully informed of the other party's worth prior to the agreement's execution, or had, or should have had, independent knowledge of the other party's worth; and (3) a waiver by the contesting party is set forth.[3] It is clear that the reasonableness of any monetary provision in an antenuptial contract cannot ultimately be judged in isolation. Rather, reference may appropriately be made to such factors as the parties' respective worth, the parties' respective ages, the parties' respective intelligence, literacy, and business acumen, and prior family ties or commitments.[4]

We add that, even if we were to apply these factors and the "fair disclosure" rule to the instant case, it could be

---

[3] See, e.g., *DelVecchio* v. *DelVecchio*, 143 So. 2d 17 (Fla. 1962); *Hartz* v. *Hartz*, 248 Md. 47 (1967); *Kaufmann Estate*, 404 Pa. 131 (1961); *McClellan Estate*, 365 Pa. 401 (1950). See generally 2 A. Lindey, Separation Agreements and Ante-Nuptial Contracts § 90-36-37 (rev. ed. 1977). Cf. *Friedlander* v. *Friedlander*, 80 Wash. 2d 293 (1972) (antenuptial agreement made in contemplation of divorce).

As to the burden of proof in cases contesting the validity of antenuptial agreements, see, e.g., *DelVecchio* v. *DelVecchio*, 143 So. 2d 17 (Fla. 1962); *Guhl* v. *Guhl*, 376 Ill. 100 (1941); *In re Estate of Parish*, 236 Iowa 822 (1945); *Burns* v. *Spiker*, 109 Kan. 22 (1921); *Denison* v. *Dawes*, 121 Me. 402 (1922); *McClellan Estate*, 365 Pa. 401 (1950); *Friedlander* v. *Friedlander*, 80 Wash. 293 (1972); *Bibelhausen* v. *Bibelhausen*, 159 Wis. 365 (1915). See also 2 A. Lindey, Separation Agreements and Ante-Nuptial Contracts § 90-83-85 (rev. ed. 1977); Comment, Husband and Wife—Antenuptial Contracts, 41 Mich. L. Rev. 1133, 1137 (1943), and cases cited.

[4] See, e.g., *Estate of Nelson*, 224 Cal. App. 2d 138 (1964); *DelVecchio* v. *DelVecchio*, 143 So. 2d 17 (Fla. 1962); *Megginson* v. *Megginson*, 367 Ill. 168 (1937); *Parker* v. *Gray*, 317 Ill. 468 (1925); *Achilles* v. *Achilles*, 151 Ill. 136 (1894); *Hartz* v. *Hartz*, 248 Md. 47 (1967); *Rocker* v. *Rocker*, 42 Ohio Op. 2d 184 (1967); *Bauer* v. *Bauer*, 1 Or. App. 504 (1970); *Kaufmann Estate*, 404 Pa. 131 (1961). See generally 2 A. Lindey, Separation Agreements and Ante-Nuptial Contracts § 90-37-38 (rev. ed. 1977).

argued that the plaintiff here is not entitled to relief. This result might well be urged from all the circumstances, including the fact that she was advised by counsel that she should request disclosure but decided not to for fear it might result in no marriage. Neither was there the slightest evidence of coercion by the decedent against the plaintiff.

The right to make antenuptial agreements settling property rights in advance of marriage is a valuable personal right which courts should not regulate destructively. Neither should the exercise of that right be looked upon with disfavor. Thus, we recognize that antenuptial agreements must be so construed as to give full effect to the parties' intentions, but we are concerned that such agreements be executed fairly and understandingly and be free from fraud, imposition, deception, or over-reaching.

*Judgment affirmed*