Agnes, A.J.
1. The defendant is charged in five indictments with Trafficking in Cocaine, Trafficking in Heroin, Possession of a Class B Controlled Substance with Intent to Distribute and illegal possession of a semi-automatic handgun. The case is before the court for trial without a jury. The Commonwealth has rested its case. The defendant has filed a motion for a required finding of not guilty. See Mass.R.Crim.P. 25(a).[1]
THE EVIDENCE
2. The Commonwealth presented evidence consisting of the testimony of three witnesses — Gardner Police Department Detective Rocco Siciliano, Westminster Police Officer Jeffrey Champigne, and Gardner Police Detective William Crockett — and numerous exhibits.[2] Viewing the evidence in the light most favorable to the Commonwealth, on the day in question, February 6, 2003, officer Siciliano received information leading him to conclude that a silver-colored, Ford Taurus vehicle with Massachusetts registration 7067X0 was headed westbound on route 2 destined for a location in the vicinity of exit 23. He alerted his fellow North Worcester County Drug Task Force members and set up a vehicle trap in the area of the rotary at the end of exit 23. The trap consisted of local and state police officers in both marked and unmarked vehicles. Officer Siciliano was operating an unmarked VW Jetta vehicle. He spotted the target vehicle as it headed west on route 2. He alerted his other task force members and supporting officers by radio or cell phone.
3. Officer Siciliano noticed two males in the front seat of the Ford Taurus. There is no evidence of any motor vehicle violation. As the target vehicle headed down the exit 23 ramp with officer Siciliano’s vehicle behind it, one of the marked vehicles at the rotary ahead activated its blue lights. With this, officer Siciliano saw movement in the Ford Taurus. The defendant, who was seated in the passenger seat, appeared to move toward the area of the vehicle’s console. When the Ford Taurus reached the area of the rotary, it was brought to an immediate stop by several marked and unmarked police vehicles. The operator and the defendant were ordered out of the vehicle, handcuffed behind their backs, and placed in separate police vehicles.
4. The police learned that the vehicle was registered to the operator. There is no evidence before me linking the defendant to the operator or to the vehicle except his presence in the vehicle at the time of his arrest. There is no evidence that the police smelled any odors associated with narcotics or with substances commonly used to mask the odor of narcotics. There is no evidence that the police observed any drug paraphernalia in plain view in the vehicle. There is no evidence that the defendant was present in the vehicle for any length of time in excess of the few minutes between when the vehicle was first spotted by officer Siciliano and then stopped. To avoid a traffic hazard and for the safety of all concerned, the police moved the target vehicle about 50 yards from the point where it was stopped to the nearby Ocean State Job Lot parking lot. The defendant was taken in custody to that location as well.
5. Officer Siciliano arranged for a narcotics sniffing dog to be brought to the scene. Sergeant Bebo and his K-9 dog, Ivan, arrived at the scene in a few minutes. *456 The area around the target vehicle was cleared. The dog circled the car and seemed to react to an area around the driver side and passenger side of the vehicle. The passenger side door was opened and the dog entered the target vehicle. Officers observed the dog focus its attention on the center area of the dashboard.
6. There was testimony from officer Siciliano and officer Champigne that at the moment Ivan “alerted” near the target vehicle’s dashboard, they turned and looked at the operator and the defendant as they sat hand-cuffed behind their backs in separate police vehicles ten to fifteen feet away from the scene and observed each person lower his head.
7. After the dog left the Ford Taurus, the police moved in and inspected the dashboard. Several screws were removed and the front piece was taken off. Behind the dashboard was a “hide” containing a large quantity of cocaine (over 100 grams) and a significant quantity of heroin (over 28 grams) and what appeared to be a .380 caliber semi-automatic handgun with a full ammunition clip inside and a round in the chamber. They also found and seized a compact, digital scale. A screwdriver was found in the back seat of the vehicle. The hidden storage area appeared to be of a sophisticated design and controlled by an electronic and hydraulic mechanism. The police were unable to discover how the mechanism was activated, i.e., the police were not able to figure out what combination of vehicle controls or hidden switches or relay devices needed to be used to open and close the hide.
8. When the police inspected the dashboard of the Ford Taurus after the drug-sniffing dog exited the vehicle, it did not appear to have been tampered with and nothing seemed to be out of place. In fact, the vehicle’s radio operated normally. I find that a person sitting in the passenger seat of the vehicle would not be on notice of the existence of a hidden storage compartment behind the dashboard based on its outward appearance when it was closed. There is no evidence in the case that the storage area was ever in the open position while the defendant was inside the vehicle.
9. The firearm was missing the firing pin and could not be fired without it. There was a powdery substance found on the handgun that was consistent with the gunpowder residue sometimes observed near the barrel of a gun that has been fired. The handgun was never taken apart and examined, and never test fired.
LEGAL ANALYSIS
10. The Commonwealth relies on the theory of non-exclusive, constructive possession by the defendant of the drugs located in the vehicle’s hidden compartment. The Commonwealth’s burden, therefore, is to offer evidence that permits a rational trier of fact to establish beyond a reasonable doubt the defendant’s knowledge coupled with an ability and intention to exercise dominion and control over the contraband. Commonwealth v. Daley, 423 Mass. 747, 752 (1996). Here, the Commonwealth has introduced evidence that establishes beyond a reasonable doubt that there was cocaine, a class B controlled substance, and heroin, a class A controlled substance, hidden inside a secret compartment of the Ford Taurus, that the drugs were packaged and stored in such a way and consisted of such a large quantity that anyone who possessed it did not possess it intending it for personal use, but rather with the intent to distribute it. The only question, therefore, is whether the Commonwealth’s evidence permits an inference that the defendant, a front seat passenger, had knowledge of the existence of the drugs and the firearm in the vehicle. See Commonwealth v. Aillo, 49 Mass.App.Ct. 496, 497 (2000) (“[K]nowledge of the presence of drugs or of weapons more readily warrants an inference of control against a driver than a passenger”).
11.In Alicea v. Commonwealth 410 Mass. 384, 387 (1991), the Supreme Judicial Court acknowledged that proof of knowledge in this context may be made by means of circumstantial evidence. However, the court cautioned that, “[djiscovery of secreted contraband in a vehicle with a defendant, without more, is not sufficient to warrant an inference of the knowledge required by the statute.”[3] Accord, Commonwealth v. Sheline, 391 Mass. 279, 284 (1984) (possession of an unopened package containing drugs does not permit an inference of knowledge); Commonwealth v. Albano, 373 Mass. 132, 134 (1977) (mere presence in the area where contraband is found is insufficient to show the necessary knowledge, or intention to exercise control over it); Commonwealth v. Schmieder, 58 Mass.App.Ct. 300 (2003) (the defendant’s presence in the condominium unit was insufficient evidence to connect her to drugs that were found in the unit); Commonwealth v. Booker, 31 Mass.App.Ct. 435, 437-38 (1991) (“Mere presence in the vicinity of a controlled substance, even if one knows that the substance is there, does not amount to possession . . . Nor is possession proved simply through the defendant’s association with a person who controlled the contraband ... or by sharing the premises where the narcotics were found ...”). In cases in which a person is charged with trafficking in drugs or possession with intent to distribute and the Commonwealth proceeds on the basis of circumstantial evidence of his guilty knowledge, there is evidence of other facts such as drugs or drug paraphernalia in plain view that supply the basis for the inference of the defendant’s knowledge, see Commonwealth v. Gonzalez, 42 Mass.App.Ct. 235, rev. den., 424 Mass. 1109 (1997) (drug paraphernalia and cash found in defendant’s apartment supported inference of his knowledge of drugs hidden under a pile of dirty clothes under his window on a common back porch), or some other obj ective indicator such as the smell of a drug that was burned. See, e.g., Commonwealth v. Deagle, 10 Mass.App.Ct. 563, 567 (1980).
*457 12. Evidence of movement by the defendant as the vehicle exited from route 2 at exit 23 does not support an inference of guilty knowledge. Such evidence is insolubly ambiguous because it is as consistent with innocent behavior as it is with guilty knowledge. See Commonwealth v. Eramo, 377 Mass. 912, 913 (1979), quoting from Commonwealth v. Croft, 345 Mass. 143, 145 (1962) (“When the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof’). See also Commonwealth v. Aillo, 49 Mass.App.Ct. 496, 498 (2000) (‘The Commonwealth argues that there is such additional evidence by reason of the defendant’s suspicious conduct, including looking back at the officers at least six times with half of his body sticking out of the window while the officers were checking for warrants. That the defendant was nervous while waiting for the police to come back after taking the occupants identifications, and that he kept looking back to see if they were returning is not an unusual reaction and does not provide the kind of additional evidence which is required to support a finding that the defendant was able to exercise control over the drugs”).
13. Evidence that the defendant lowered his head while handcuffed behind his back inside the police cruiser while the dog was inside the Ford Taurus does not support an inference of the defendant’s consciousness of guilt and knowledge of what was later discovered to be narcotics inside the vehicle. The observation of head movement by the defendant is insolubly ambiguous because it is as consistent with innocent behavior as it is with guilty knowledge. See Commonwealth v. Eramo, 377 Mass. 912, 913 (1979), quoting from Commonwealth v. Croft, 345 Mass. 143, 145 (1962) (“When the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof”).
14. The Commonwealth’s case reduces to one of overwhelming evidence that the defendant was a passenger in a motor vehicle containing a secret compartment filled with cocaine, heroin, drug paraphernalia, and a gun, but no evidence that the defendant had any knowledge that the secret compartment existed or of its contents. The defendant correctly relies on Commonwealth v. Movilis, 46 Mass.App.Ct. 574 (1999), in which the Appeals Court determined that the Commonwealth had failed to prove that the defendant had possession of a large amount of cocaine found in a vehicle he had been driving and had parked outside a café. The defendant and his passenger exited from the vehicle and entered the café. The police followed him inside. The police observed, in plain view, a quantity of cocaine on a table in front of the defendant. The police escorted him outside, obtained his car keys, searched the vehicle, and found a large quantity of cocaine hidden inside an electronically controlled, secret compartment built into the rear portion of the front passenger seat. On these facts, the Appeals Court concluded that the Commonwealth had not established that the defendant had knowledge of the existence of or contents of the secret compartment and therefore had not proved possession. An abundance of suspicion does not alter the fact that a person in the defendant’s position may have simply been along for the ride. See United States v. Di Re, 332 U.S. 581 (1948). It is the settled law of this Commonwealth that evidence of mere presence in the area where drugs are found is not sufficient to support a conviction for possession of contraband. See Commonwealth v. James, 54 Mass.App.Ct. 726 (2002). See also Commonwealth v. Prentice P., 57 Mass.App.Ct. 766 (2003).
ORDER
15. In the Superior Court, we deal with evidence, facts and the law. We do not engage in speculation or guesswork. We do not concern ourselves with knowledge that is outside the realm of competent evidence or facts that can be demonstrated to be true by reference to authoritative sources. Considering only the evidence offered at the trial and not what else may have been known by the police or presented on another occasion,[4] the evidence presented by the Commonwealth is legally insufficient to support a guilty finding.
16. For the above reasons, the defendant’s motion for a required finding of not guilty is ALLOWED.

 Ordinarily, at this stage, the court is required to view the evidence in the light most favorable to the Commonwealth and to draw every reasonable inference in favor of the Commonwealth that is permitted by the evidence in order to determine whether the evidence is sufficient to warrant a fact-finder in returning a verdict or making a finding of guilty. Under this standard, credibility questions are resolved in favor of the Commonwealth. See Commonwealth v. Latimore, 377 Mass. 671. 676-77 (1978), discussing Commonwealth v. Cooper, 264 Mass. 368, 372-73 (1928). That is the standard I apply to the evidence described in the text. But when the case is tried without a jury, the judge is the fact-finder and is permitted to consider credibility and to weigh the evidence at this stage because the Commonwealth has completed its case and there is no reason to believe its case will improve if the trial continues. See Commonwealth v. Binkiewicz, 339 Mass. 590 (1959); Commonwealth v. Young, 326 Mass. 597, 600 (1950). In fact, in this case, defense counsel indicated that there was no other evidence to be presented.
Thus, in this case, an alternative ground for the result I reach is based on a determination of credibility and weight of the evidence. Under this approach, as the finder of fact, I adopt the findings set forth in the text with two exceptions. Even if, as a matter of law, inferences of consciousness of guilt or guilty knowledge could possibly be drawn from evidence of the defendant’s body movements before and after his arrest, I do not draw any such inference of consciousness of guilt or knowledge.

Another judge heard and denied a pretrial motion to suppress in which the defendant maintained that the police lacked probable cause to stop his vehicle and that the detention of the defendant and search of the vehicle exceeded the scope of any lawful authority enjoyed by the police. Those questions are not before this court. This trial is simply about whether the Commonwealth has proved beyond a reasonable *458 doubt that the defendant knowingly or intentionally possessed the drugs and the firearm located in the vehicle in which he was a passenger.

In Alicea v. Commonwealth, supra, the defendant was operating a motor vehicle that was stopped for impeded operation due to a cracked windshield and a defective tail light. The state trooper who approached the vehicle noticed it had a popped ignition. The defendant denied that there were any drugs in the car, but invited the police to search it. When the police began to look inside the door frame on the driver’s side, the defendant’s demeanor changed “remarkably,” and he became obviously and visibly agitated. 410 Mass, at 386. Based on these facts, the court held that the defendant’s remarkable change in behavior supported an inference of his guilty knowledge. Id. at 387-88. The facts in the present case are that officers standing 10-15 feet away from the defendant’s vehicle were able to observe the K-9 dog alert and, virtually simultaneously observe a movement of the defendant’s head forward as he sat handcuffed some distance away in the car of a police cruiser. Even if this testimony is credited, it is not like the circumstantial evidence considered in Alicea v. Commonwealth and not probative of the defendant’s knowledge.

There was evidence that the screws holding the dashboard plate seemed slightly worn. That fact adds nothing to the weight of the government’s case. Curiously, however, in the pretrial Memorandum of Decision denying the defendant’s motion to suppress, there are findings that a portion of the dashboard seemed to be of a different color than the rest of the vehicle. There was no evidence presented at trial in this regard.