NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-791

KELLY DANIEL, personal representative,[1] & another[2]

vs.

MARTA NOEMI DANIEL.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Clebert Daniel (decedent) and his wife (defendant) signed an antenuptial agreement (agreement); twenty-eight months later, he died.  The plaintiffs, personal representatives of the decedent's estate, brought this suit against the defendant to enforce the agreement's terms.  The defendant counterclaimed, seeking a declaration that the agreement was not enforceable and that she has an interest in the decedent's estate as his spouse. A judge of the Middlesex Probate and Family Court issued a judgment on the plaintiff's complaint and a judgment on the

---

[1] Of the estate of Clebert Daniel.

[2] Robenson Daniel, personal representative of the estate of Clebert Daniel.

defendant's counterclaim, denying enforcement of the agreement and affirming the defendant's interest in the decedent's estate. The plaintiffs appealed. We affirm.

"Contract principles apply to antenuptial agreements, and the interpretation of an antenuptial agreement is a question of law, which we review de novo." Rudnick v. Rudnick, 102 Mass. App. Ct. 467, 470 (2023). "The Probate and Family Court judge's findings of fact are reviewed for clear error." Id.

"For an antenuptial agreement to be enforceable, it must be both (1) fair and reasonable at the time of execution (the 'first look'), and (2) conscionable at the time of enforcement (the 'second look')." Rudnick, 102 Mass. App. Ct. at 470, citing DeMatteo v. DeMatteo, 436 Mass. 18, 35-38 (2002). Here, the probate judge determined the agreement was not fair and reasonable at the time of execution. Because we discern no abuse of discretion in this determination, we need not address whether the agreement was conscionable at the time of attempted enforcement. See Austin v. Austin, 445 Mass. 601, 607 (2005).

On the first look, we examine whether "(1) [the agreement] contains a fair and reasonable provision as measured at the time of its execution for the party contesting the agreement; (2) the contesting party was fully informed of the other party's worth prior to the agreement's execution, or had, or should have had, independent knowledge of the other party's worth; and (3) a

2

waiver by the contesting party is set forth." Rosenberg v. Lipnick, 377 Mass. 666, 672 (1979). "In determining whether an agreement was fair and reasonable at the time of execution, 'reference may appropriately be made to such factors as the parties' respective worth, . . . intelligence, literacy, business acumen, and prior family ties or commitments.'" Austin, 445 Mass. at 604, quoting Rosenberg, supra at 672.

For an agreement to pass muster on the first look, there must have been a "meaningful informed waiver of marital rights." Eyster v. Pechenik, 71 Mass. App. Ct. 773, 783 (2008). "[I]t is not enough to know that marriage confers some undefined rights. A practical understanding of those rights is essential." Id. at 786. We consider "whether each party was represented by independent counsel, the adequacy of the time to review the agreement, the parties' understanding of the terms of the agreement and their effect, and a party's understanding of his or her rights in the absence of an agreement." DeMatteo, 436 Mass. at 29.

There was no error in the probate judge's conclusion that, at the time of execution, there was not a meaningful informed waiver of marital rights. As the judge found, there were "significant differences in parties' wealth and literacy in English." The original signed agreement was in English. The defendant had a ninth grade education and "spoke virtually no

3

English."  At the time of execution, she had been in the United States "just short of a month" on a fiancée visa that "required that the parties' marriage take place in 90 days."  She "had no independent legal advice as to her legal rights upon death or divorce" and her ability to retain counsel prior to signing "was somewhat doubtful."  The defendant was informed, in Spanish, that she could consult an attorney before signing the agreement, but the record is devoid of evidence that the terms of the agreement were communicated to her in Spanish at that time.  The defendant and the decedent signed the same agreement in Spanish two weeks after the execution of the original, but the probate judge found that there was "no discussion about what would happen at either party's death or what legal rights were being waived."

The judge's findings are supported by the record and show that the agreement was not fair and reasonable at execution.  There is no evidence that the defendant was informed of or meaningfully understood the agreement, the rights she was giving up, or her rights in the absence of the agreement, given her limited education, her inability to speak or understand English, and the timing of execution.  See Rostanzo v. Rostanzo, 73 Mass. App. Ct. 588, 600-601 (2009); Eyster, 71 Mass. App. Ct. at 785-786.  See also Austin, 445 Mass. at 603; DeMatteo, 436 Mass. at 28-29.

4

The judge also supportably found that the defendant did not have adequate notice of the decedent's assets. The judge found that "[n]o schedules of assets were appended to the agreement filed with the Court" and credited the defendant's testimony that she did not review the asset disclosure documents associated with her visa proceedings. The factual findings demonstrate that the decedent's disclosure at execution was not "such that a decision by [the defendant] may reasonably [have been made] as to whether the agreement should go forward." DeMatteo, 436 Mass. at 27. See Rosenberg, 377 Mass. at 670 ("The burden is not on either party to inquire, but on each to inform, for it is only by requiring full disclosure of the amount, character, and value of the parties' respective assets that courts can ensure intelligent waiver of the statutory rights involved"). The plaintiffs' assertions to the contrary amount to unpersuasive factual challenges. Because the probate judge credited the testimony of the defendant, who was the sole

witness, and otherwise grounded her findings in the evidence before her, those findings were not clearly erroneous.

Judgments dated April 22, 2025, affirmed.

Order dated June 11, 2025, affirmed.

By the Court (Singh, Hershfang & Wood, JJ.[3]),

Paul Little

Clerk

Entered:  March 24, 2026.

---

[3] The panelists are listed in order of seniority.

6